James D. BLOOD, Appellant,

v.

KENNETH MURRAY INSURANCE, INC. and Progressive Insurance Companies, Inc., Appellees.

No. S–10123.

Supreme Court of Alaska.

April 25, 2003.

Robert John, Law Office of Robert John, Fairbanks, for Appellant.

Michael C. Kramer and Dennis C. Cook, Cook Schuhmann & Groseclose, Inc., for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

James D. Blood was injured while riding as a passenger in an automobile operated by an uninsured driver. Blood submitted an uninsured motorist/underinsured motorist (UM/UIM) claim, but his insurer denied coverage. Blood then sued the insurer and insurance agent. We consider here whether Blood waived his right to arbitrate UM/UIM issues by seeking a declaration of coverage and damages in his lawsuit against the insurer and the agent. Because we conclude that Blood did not waive that right, we reverse the order dismissing his lawsuit and remand for further proceedings, including trial of the coverage dispute.

## II. FACTS AND PROCEEDINGS

In March 1996 James Blood purchased from Kenneth A. Murray Insurance, Inc. (KMI) an automobile liability insurance policy issued by Progressive Insurance Company.

Blood did not pay the renewal premium on his policy, and Progressive sent three termination-of-coverage notices to him at the address in Progressive's files. Blood no longer lived at that address, and the letters were returned undelivered. Although Progressive mailed the notices, they were returned to KMI.

Blood later purchased another policy from KMI. The parties dispute whether Blood told KMI that he had moved and whether KMI should have asked Blood if he had moved. When Blood failed to make payments on this policy, Progressive again sent notices to Blood at the address in its files—Blood's old address.

On August 2, 1997 Blood was injured in an automobile accident while riding in a car driven by an uninsured driver. Blood filed a claim and a demand for arbitration with Progressive under his uninsured motorist coverage. Progressive denied the claim; it assert-

ed that Blood's policy had lapsed before the accident because he had not paid the renewal premium. Progressive also denied Blood's arbitration request, on the ground that arbitration only applied to liability and damages issues, not coverage disputes.

Blood then sued Progressive and KMI for a declaration of coverage and an award of damages. Blood's complaint alleged that KMI was negligent in failing to use reasonable efforts to obtain his "last known address," and that therefore Progressive's attempts to cancel his policy for non-payment under AS 21.36.220 [1] and AS 21.36.260 [2] were ineffective.

In July 2000 Blood moved for partial summary judgment on the policy dispute. The defendants moved for dismissal. The court denied both motions because material factual disputes existed.

A five-day trial was scheduled to begin on February 26, 2001. During a hearing to resolve pretrial motions on the morning of the first day of the trial, Blood's counsel informed the superior court and the defendants that Blood was in Florida, and that financial difficulties prevented him from attending the trial in person. Blood's counsel asked that Blood be allowed to testify telephonically. The court refused, holding that Blood's credibility was critical to the case and that the defendants would be prejudiced if they could not test his credibility in person.

During further discussion about pretrial issues, Blood's counsel commented that he only sought a declaration of coverage from the court so that he could proceed to arbitration. The defendants responded that Blood had waived his right to arbitration by filing a lawsuit requesting damages, by failing to seek arbitration in his complaint (or not claiming that the defendants wrongly denied arbitration), and by indicating up to the day of trial an intention to litigate both damages and coverage issues.

The superior court heard more argument on this issue the next day. The court noted that Progressive had rejected Blood's de-

---

1. AS 21.36.220 requires an insurance company to mail notice of cancellation to the insured before it cancels a policy.

2. AS 21.36.260 requires the insurance company to "mail the notice ... to the last known address of the insured."

mand for arbitration in 1997. The court also thought that the defendants were not prejudiced by Blood's failure to plead arbitration, because any effort they had put into defending a damages case would be equally applicable to an arbitration. Nonetheless, the court held that Blood had waived his right to arbitration by failing to request it in his complaint. The court cited *Hillman v. Nationwide Mutual Fire Insurance Co.*[3] and *International Brotherhood of Teamsters v. King*[4] in support of its decision.

In light of its ruling that arbitration was no longer an available remedy, the court next held that Blood had to prove damages in court. Blood's counsel responded that he was "not prepared to present a damages case." The court relied on this concession and dismissed Blood's case, ruling that "if he can't prove damages, he can't prevail."

Blood's counsel then moved to "stay" the trial so Blood could testify in person and so he could amend his complaint to include arbitration. [Exc. 300 (23: 19–24) ] The court denied these motions. Blood's motion for reconsideration was unsuccessful. Blood appeals.

## III. DISCUSSION

### A. Blood Did Not Waive His Right to Arbitration.

#### 1. Standard of review

 Whether a waiver occurred is a question of fact. A trial court's finding of waiver will therefore be set aside on review only if it is clearly erroneous.[5]

#### 2. Failure to plead arbitration

 Progressive's insurance policy gave Blood the right to arbitrate UM/UIM disputes.[6] The superior court ruled that Blood waived this arbitration right by failing to state in his complaint that he was seeking arbitration. The court based its ruling on *International Brotherhood of Teamsters v. King*[7] and *Hillman v. Nationwide Mutual Fire Insurance Co.*,[8] which it interpreted as holding that the remedy of arbitration "was waived by virtue of the failure to plead it."

In *Teamsters*, we held that the defendant had waived its right to demand arbitration by failing to plead an affirmative defense of arbitration as required by Alaska Rule of Civil Procedure 8(c),[9] by availing itself of discovery procedures which were probably unavailable under arbitration, and by delaying for over three years in raising the issue of arbitration.[10]

The superior court read *Teamsters* to require Blood to plead arbitration in his complaint or waive that remedy. In *Teamsters* we interpreted Rule 8(c) to require a defendant seeking arbitration to raise that remedy as a defense in its answer if it did not want to waive its right.[11] But more recently, we explained in *Loyal Order of Moose v. International Fidelity Insurance Co.* that "a demand for arbitration [is not] equivalent to the affirmative defense 'arbitration and award.' "[12]

---

3. 758 P.2d 1248, 1253 (Alaska 1988).

4. 572 P.2d 1168, 1173–75 (Alaska 1977).

5. *Miscovich v. Tryck*, 875 P.2d 1293, 1302 (Alaska 1994).

6. The UM/UIM portion of the policy states in pertinent part:

 Determination of whether an insured person is legally entitled to recover damages and the amount of damages will be made by agreement between the insured person and us. If no agreement is reached, the decision may be made by arbitration if we or the insured person make a written demand for arbitration....

7. 572 P.2d 1168 (Alaska 1977).

8. 758 P.2d 1248 (Alaska 1988).

9. Alaska Civil Rule 8(c) provides: "In pleading to a preceding pleading, a party shall set forth affirmatively ... arbitration and award...."

10. 572 P.2d at 1174.

11. *Id.* at 1173.

12. 797 P.2d 622, 629 n. 16 (Alaska 1990); *see also Victor v. State Farm Fire & Cas. Co.*, 795 F.Supp. 300, 304 n. 6 (D.Alaska 1992) (observing that identical Federal Rule of Civil Procedure 8(c) "is limited to the situation where a dispute has already been arbitrated and an award has been obtained, not to situations where arbitration has not yet taken place").

The superior court cited *Hillman* for the same principle as *Teamsters*. In *Hillman*, we held that the defendant insurance company did not waive its right to arbitrate the uninsured motorists claim. We ruled that a plaintiff who initiates litigation in violation of an arbitration clause cannot later claim waiver by the defendant.[13]

The superior court in the present case did not explain why it thought *Hillman* supported its conclusion. Possibly it reasoned that if the insureds in *Hillman* could not *claim* waiver of arbitration by the defense because the plaintiffs knowingly initiated litigation in violation of the arbitration clause, then Blood, the insured in this case, could not *oppose* waiver when he did the same thing. But claiming and opposing waiver raise distinct issues. The insureds in *Hillman* could not claim waiver because they had suffered no prejudice; whether Blood can successfully oppose a claim that he waived arbitration turns largely on whether his actions in pursuing his lawsuit unequivocally indicated a purpose to abandon his right to arbitrate.[14]

The holdings in *Teamsters* and *Hillman* did not require Blood to plead arbitration in his complaint or be deemed to have forever waived that remedy. But Blood may nonetheless have impliedly waived his right to arbitration.

### 3. Implied waiver of contractual right to arbitrate

■ The law favors arbitration.[15] Waiver is not to be lightly inferred,[16] and courts should resolve doubts concerning whether there has been a waiver in favor of arbitration.[17]

■ Waiver is an "express or implied voluntary and intentional relinquishment of a known or existing right." [18] Progressive does not contend that Blood expressly relinquished his right to arbitration. The superior court did not consider whether Blood impliedly waived his right to arbitration. Instead, it determined that Blood's failure to specifically plead arbitration waived that remedy. Because we have concluded that Blood's failure to plead it in his complaint did not waive the arbitration remedy, we must determine whether Blood impliedly waived his arbitration rights. We conclude that he did not.

We explained the requirements for implied waiver of contractual rights in *Powers v. United Services Automobile Ass'n*, where we observed:

> To prove an implied waiver of a legal right, there must be direct, unequivocal conduct indicating a purpose to abandon or waive the legal right.... Neglect to insist upon a right only results in an estoppel, or an implied waiver, when the neglect is such that it would convey a message to a reasonable person that the neglectful party would not in the future pursue the legal right in question. Even where neglect results in prejudice to another party, for an implied waiver to arise there must be direct, unequivocal conduct indicating a purpose to abandon the right.[19]

Blood argues that rather than engaging in "direct, unequivocal conduct indicating a purpose to abandon" or to waive his right to arbitration, he consistently sought arbitration before and during the litigation. In 1997 when he first submitted his claim to Progres-

---

13. 758 P.2d at 1253.

14. *See Wausau Ins. Cos. v. Van Biene*, 847 P.2d 584, 588 (Alaska 1993).

15. *Bd. of Educ., Fairbanks North Star Borough Sch. Dist. v. Ewig*, 609 P.2d 10, 13 (Alaska 1980) (affirming decision of arbitrator); *Int'l Bhd. of Teamsters v. King*, 572 P.2d 1168, 1173 (Alaska 1977).

16. *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir.1998) (holding waiver occurred despite general policy favoring arbitration).

17. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 130 (2d Cir.1997) (ruling no waiver of right to compel arbitration) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

18. *Powers v. United Servs. Auto. Ass'n*, 6 P.3d 294, 298–99 (Alaska 2000) (holding no waiver absent direct, unequivocal conduct indicating purpose to abandon right to arbitration).

19. *Id.* at 299.

sive, Blood made a written demand for arbitration. Progressive rejected this demand, asserting that under the policy, arbitration only applied to disputes about liability or damages, not to disputes over the existence of coverage.

Blood's complaint did not seek arbitration or claim that Progressive wrongly rejected his demand for arbitration. Instead, it alleged breach of contract, bad faith, malpractice, negligence, and breach of fiduciary duty. It requested a "declaratory judgment stating that the Progressive policy was in effect" and sought "general and special damages . . . interest, costs, attorney fees and other recovery as allowed by law."

In his memorandum accompanying his motion for partial summary judgment on liability, Blood asked the superior court to rule that the insurance policy was in effect and to "order the parties to arbitration." He also filed a proposed order that would have ordered the parties to arbitrate. Eight days before trial was to begin, Blood filed written objections to all of the defendants' proposed jury instructions that framed the case as a personal injury suit. He argued in his objections that if coverage exists, "this matter should be sent to an arbiter to determine the full amount of [Blood's] losses as all parties reasonably expected."

Blood's preliminary witness list and his Alaska Civil Rule 26(a) initial disclosures both indicate that he intended to litigate damages in court. Both documents identify physicians who had treated Blood for his injuries after the car accident, and the initial disclosure list indicates that the doctors would have information on Blood's "injuries, aftermath and prognosis."

■ But even though these documents were inconsistent with arbitrating the UM/UIM claim, the superior court record also contains repeated assertions of Blood's interest in arbitration. Neglecting to insist upon a right only results in an implied waiver of that right if that neglect "convey[s] a message to a reasonable person that the neglectful party would not in the future pursue the legal right in question." [20] To the extent that Blood's actions throughout the litigation process might have left a reasonable person confused about his intentions, that confusion simply confirms that there was no unequivocal waiver. Blood did not clearly and unequivocally abandon his intent to pursue arbitration.

The defendants' own conduct is consistent with a conclusion that they did not understand that Blood, by suing them, had unequivocally waived his right to arbitrate UM/UIM issues, if there was coverage. Progressive's answer to Blood's initial complaint raised arbitration as an affirmative defense: "In the event that this court concludes that the policy in question remained in force on the date of the accident in question, plaintiff's claim is subject to the arbitration provision of the policy and plaintiff's claims should be dismissed in favor of arbitration." And defendants did not pursue the damages aspect of the case extensively during discovery. They did not depose any damage-related witnesses, they did not seek a physical exam of Blood under Alaska Civil Rule 35, and their witness lists did not name any damage-related witnesses. Motion practice centered on what both parties conceded was the main issue in the lawsuit—whether KMI should have learned of Blood's new address. The defendants devoted little attention to the liability and damages issues.

Because Blood sued not only Progressive, but also KMI, his damages claims do not compel a finding that he was unequivocally waiving arbitration. Had Blood sued only Progressive, his efforts to litigate liability and damages issues might have implied that he was no longer interested in arbitrating those issues if the court found coverage. But Blood was also pursuing KMI on the independent theory that it breached the duties that an insurance agent owes the insured. As to these claims, it is not obvious that Blood (or KMI) had any right to arbitration. Normally, someone in Blood's position, suing the agent on a theory it negligently failed to secure uninsured motorist coverage, would have to prove at trial both the existence of the insurance producer's breach of duties owed to the would-be insured and the dam-

**20.** *Airoulofski v. State,* 922 P.2d 889, 894 (Alaska 1996).

ages the breach caused—i.e., the amount recoverable had the coverage been in place. To prove the latter, he would have to prove the uninsured motorist's fault and the damages that fault caused. Therefore it is not unexpected that Blood took steps to prove liability and damages at trial in the context of his claim against KMI. The existence of the KMI claim consequently weighs against finding that Blood's lawsuit established an unequivocal waiver of a right to arbitrate liability and damages in his claim against Progressive.

We conclude that it was error to find that Blood waived his right to seek arbitration.

It follows that it was also error to dismiss Blood's case based on Blood's professed inability to present damages at the scheduled trial. Because any inability to prove damages would have had no bearing on the narrow coverage issue and would not obviate the need to try the coverage issue, and because Blood claimed he could try the coverage issue without testifying at trial, it was error not to conduct a trial to resolve the coverage issue. We therefore remand for further proceedings to resolve the coverage dispute.

Our conclusion that Blood did not waive his right to arbitration moots issues arising out of Blood's unsuccessful requests for a continuance and for leave to amend his complaint.

### B. Blood's Trial Theory Will Control Whether He May Testify Telephonically.

The superior court refused to allow Blood to testify telephonically. The court ruled that Blood's credibility was "so critical" that the defendants had to have the opportunity to cross-examine him in person before the jury.

Blood's credibility is highly pertinent to the issues of liability and damages which will now be set for arbitration. Our ruling today

makes it unnecessary to decide whether those rulings are error.

It is conceivable that on remand the issue of coverage will not turn on Blood's credibility. If it does not, the dispute about whether he can testify by telephone will be immaterial. If Blood's testimony is relevant, trial of the coverage issue must be scheduled at a time Blood is prospectively available to testify in person. If that is not possible, the court shall provide Blood a fair opportunity to preserve his testimony, such as by videotaped deposition, upon adequate notice to opposing counsel.

We cannot foresee whether Blood's testimony will be relevant to the coverage issue. The relevance of his testimony depends on precisely what issues control the coverage dispute on remand.

### C. The Superior Court Properly Denied Summary Judgment.

#### 1. Standard of review

We review a denial of summary judgment de novo to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law on the established facts.[21] "All reasonable inferences of fact from proffered materials must be drawn against the moving party and in favor of the non-moving party."[22]

#### 2. The superior court properly denied Blood's summary judgment motion against KMI.

Blood argues that he was entitled to summary judgment because KMI had a duty to ask him for his new address in light of the three pieces of returned mail it had in its files when Blood obtained the second policy.

Blood relies on either AS 21.36.220 or AS 21.36.240, and AS 21.36.260 to support his argument. Section .220 imposes a duty on an insurance company to notify a policyholder about a cancellation of an existing policy.[23]

---

**21.** *Reeves v. Alyeska Pipeline Serv. Co.*, 926 P.2d 1130, 1134 (Alaska 1996).

**22.** *Id.*

**23.** AS 21.36.220 provides in pertinent part:

(a) An insurer may not exercise its right to cancel a personal insurance policy unless, for a named insured who is

(1) less than 70 years of age, a written notice of cancellation is mailed to the named insured

Section .240 imposes the same duty for failure to renew a policy.[24] Both statutes refer to AS 21.36.260, which states that "if a notice is required from an insurer ... the insurer shall (1) mail the notice by first class mail to the last known address of the insured...."

Blood relies on *Jefferson v. Alaska 100 Insurance, Inc.*[25] in arguing that an insurance agent has a "duty to exercise reasonable care, skill, and diligence ... to inform the insured of termination of coverage."

Blood also relies on *Rosenberg v. Smidt*[26] in contending that the defendants have a duty to use due diligence to determine a party's "last known address." In *Rosenberg*, we analyzed the phrase "last known address" in a different context but concluded "that the last known address is that address most likely to give the affected party notice. The trustee is obligated to exercise due diligence to determine that address...."[27]

Even if Blood is correct that KMI and Progressive owed him such a duty, there remains the question whether the defendants exercised due diligence. As the superior court correctly noted:

> Even if every single detail of what took place there is stipulated, which it's not, but even supposing it were, [the] finder of fact still has to determine whether [KMI] breached a duty it owed and whether [KMI] was negligent. That in itself is a fact question, not in the sense of what happened, but in the sense of what is traditionally determined by a trier of fact.[28]

Assuming a jury could find that KMI was negligent for failing to ask for Blood's new address, we cannot hold that a jury could only reach this result.

Lastly, Blood argues that he should receive summary judgment on a theory of promissory estoppel. He argues that he relied on KMI's insurance expertise and that "it is reasonable to expect that when he gave KMI his [new] address, that address would be the one at which Progressive would contact him concerning his policy." This argument is without merit because there is a genuine dispute whether Blood gave KMI his new address. The superior court properly denied summary judgment to Blood on the coverage issue.

## IV. CONCLUSION

We therefore AFFIRM the denial of summary judgment to Blood, but REVERSE the decision that Blood waived his right to arbitration, REVERSE the dismissal of Blood's case, and REMAND for further proceedings, including trial on the coverage issue.

---

24. AS 21.36.240 provides in pertinent part: "An insurer may not fail to renew a policy unless a written notice of nonrenewal is mailed to the named insured as required by AS 21.36.260 at least 20 days for a personal insurance policy...."

as required by AS 21.36.260 at least 30 days before the effective date of cancellation; however, if cancellation is for nonpayment of premium, the notice shall be mailed to the named insured as required by AS 21.36.260 at least 20 days before the effective date of cancellation....

25. *Jefferson v. Alaska 100 Ins., Inc.,* 717 P.2d 360, 364 (Alaska 1986).

26. 727 P.2d 778 (Alaska 1986).

27. *Id.* at 783.

28. *See Beaux v. Jacob,* 30 P.3d 90, 96 n. 5 (Alaska 2001) (noting that "[w]hether particular conduct is negligent is a question of fact normally reserved for the trier of fact"); *Dobos v. Ingersoll,* 9 P.3d 1020, 1026 (Alaska 2000) (explaining that "whether [a party] was negligent was a question of fact properly determined by the jury").