**James D. BLOOD, Appellant,**

**v.**

**KENNETH A. MURRAY INSURANCE, INC., and Progressive Insurance Companies, Appellees.**

**Kenneth A. Murray Insurance, Inc., Cross–Appellant,**

**v.**

**James D. Blood, Cross–Appellee.**

**Nos. S–11733, S–11763.**

Supreme Court of Alaska.

Dec. 22, 2006.

Robert John, Law Office of Robert John, and Ward Merdes, Merdes & Merdes, P.C., Fairbanks, for Appellant and Cross–Appellee Blood.

Michael C. Kramer, Cook Schuhmann & Groseclose, Inc., Fairbanks, for Appellee and Cross–Appellant Kenneth A. Murray Insurance, Inc.

Aisha Tinker Bray, Guess & Rudd, P.C., Fairbanks, for Appellee Progressive Insurance Companies.

Susan Orlansky, Feldman Orlansky & Sanders, Anchorage, Richard A. Hodyl, Jr., Meckler Bulger & Tilson LLP, Chicago, for Amicus Curiae Property Casualty Insurers Association of America.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, and FABE, Justices.

**1.** 68 P.3d 1251 (Alaska 2003).

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

This appeal follows a jury trial to determine whether James Blood's automobile insurance coverage remained in effect, despite his failure to pay premiums, because the insurer sent notice of termination to the wrong address. The jury returned a verdict in favor of the insurer after concluding (1) that the insurer had not met its obligation to notify Blood but (2) that the failure did not cause Blood's lack of coverage. The parties ask us to review whether the insurer's efforts to notify were examined under the proper legal standard and whether it was error to include causation as an element of Blood's claim. We conclude that the jury was instructed on the wrong legal standard, but that the insurer satisfied its notice obligations as a matter of law. We therefore affirm the judgment without considering the causation issue.

## II. FACTS AND PROCEEDINGS

This case is here for the second time. The following statement of facts is taken largely from our prior opinion, *Blood v. Kenneth Murray Insurance, Inc. (Blood I).*[1]

James Blood purchased an automobile liability insurance policy from Kenneth A. Murray Insurance, Inc. (KMI), on March 28, 1996. Progressive Insurance Company issued the policy. The policy term was six months. "Blood did not pay the renewal premium on his policy, and Progressive sent three termination-of-coverage notices to him at the address in Progressive's files. Blood no longer lived at that address, and the letters were returned undelivered. Although Progressive mailed the notices, they were returned to KMI."[2] The policy expired by its terms on September 28, 1996. On November 4, 1996, Blood appeared in person at KMI's office and renewed the lapsed policy for another six-month term. Blood prepaid the premium for this new term. On March 13, 1997, and April 20, 1997, Progressive sent

**2.** *Id.* at 1253.

Blood notices that his coverage would expire on May 5, 1997, and that in order to renew his coverage he would have to submit renewal premiums by that date. On May 5, 1997, Progressive sent Blood a notice that his coverage was terminated effective May 16, 1997. These notices were sent to Blood at the address in Progressive's files, which was Blood's old address. These notices were returned to KMI marked "undeliverable."

On August 2, 1997, Blood "was injured in an automobile accident while riding in a car driven by an uninsured driver." [3] He filed a claim against Progressive and demanded arbitration under the uninsured motorist coverage of his then-lapsed insurance policy. Progressive denied the claim on the ground that Blood's coverage under the policy ended before the accident because he did not pay the renewal premium.[4] Progressive denied the arbitration request on the theory that "arbitration only applied to liability and damages issues, not coverage disputes." [5]

Blood then filed suit against Progressive and KMI seeking a declaration of coverage and an award of damages. Blood argued that he was covered by the insurance policy at the time of the accident because "KMI was negligent in failing to use reasonable efforts to obtain his 'last known address,' and that therefore Progressive's attempts to cancel his policy for non-payment under AS 21.36.220 [6] [or AS 21.36.240,[7]] and AS 21.36.260 [8] were ineffective." [9] Although the complaint sought damages, Blood's counsel ultimately took the position that he wanted only a declaration of coverage so that he could proceed to arbitration on his damages claims.[10] Blood moved for summary judgment on the coverage issue, arguing (1) that KMI had a duty to exercise reasonable care and diligence when notifying him, as the insured, of termination of coverage [11] and (2) that KMI breached its duty as a matter of law because it had three pieces of returned mail in its files when it mailed Blood's termination notice to the same address. Without ruling on the validity of Blood's duty theory, the superior court denied his summary judgment motion on the ground that factual issues remained as to whether such a duty was breached.

Next, Progressive and KMI argued that Blood waived his right to arbitration on his damages claims because he filed a lawsuit seeking damages and indicated an intention to litigate damages up until the day of trial.[12] The superior court agreed and held that Blood had to prove his damages in court.[13] "Blood's counsel responded that he was 'not prepared to present a damages case,'" and so the court dismissed the case, noting that Blood could not prevail if he could not prove damages.[14]

3. *Id.*

4. *Id.*

5. *Id.*

6. AS 21.36.220 prevents an insurer from cancelling insurance without first giving notice to the insured. It provides in relevant part:
   (a) An insurer may not exercise its right to cancel a personal insurance policy unless, for a named insured who is
   (1) less than 70 years of age, a written notice of cancellation is mailed to the named insured as required by AS 21.36.260 at least 30 days before the effective date of cancellation; however, if cancellation is for nonpayment of premium, the notice shall be mailed to the named insured as required by AS 21.36.260 at least 20 days before the effective date of cancellation....

7. AS 21.36.240 requires an insurer to notify the insured when insurance will not be renewed. It provides in relevant part: "An insurer may not fail to renew a policy unless a written notice of nonrenewal is mailed to the named insured as required by AS 21.36.260 at least 20 days for a personal insurance policy ... before the expiration date of the policy...."

8. AS 21.36.260 reads as follows: "If a notice is required from an insurer under this chapter, the insurer shall (1) mail the notice by first class mail to the last known address of the insured; and (2) obtain a certificate of mailing from the U.S. Postal Service."

9. *Blood I,* 68 P.3d at 1253.

10. *Id.*

11. *Id.* at 1258.

12. *Id.* at 1253.

13. *Id.* at 1254.

14. *Id.*

Blood appealed, and in *Blood I* we concluded that Blood did not waive his right to arbitrate, but we affirmed the superior court's denial of Blood's summary judgment motion on the coverage issue because material issues of fact remained in dispute.[15] We therefore remanded the case "for further proceedings, including trial on the coverage issue."[16]

In the resulting coverage trial, the superior court ruled on the duty question as follows. First, the court found that KMI satisfied its statutory duty, meaning that notices of nonrenewal and cancellation were mailed to Blood to his last known address as required by AS 21.36.260. Second, the court concluded that KMI also owed a separate, non-statutory, duty to "exercise reasonable care, skill, and diligence to inform the insured of termination of coverage." Whether KMI satisfied this second duty was a question for the jury, which was instructed that "[u]nder Alaska law, an insurance agent may terminate an insurance policy only by mailing notice to the last known address of the insured. It is also required by Alaska law that the insurance agent exercise reasonable care, skill and diligence to inform the insured of termination of coverage." "In order to prevail in this lawsuit, Mr. Blood must show not only that [KMI] breached a duty owed to him, but also that the breach was a 'legal cause' of harm to him."

The jury returned a special verdict, finding that KMI failed "to exercise reasonable care, skill, and diligence to inform [Blood] of termination of coverage," but that the failure was not a legal cause of harm to Blood. The superior court entered judgment in favor of KMI and Progressive.

Blood appeals and argues that causation should not have factored into whether KMI's breach of its non-statutory duty to provide notice of terminated coverage resulted in his continued coverage under the policy. Instead, he claims that KMI's breach, alone, establishes continued coverage. Blood also argues that KMI did not meet its separate obligations under AS 21.36.260. KMI's cross-appeal contends that an insurer does not owe a non-statutory duty of due diligence to inform an insured of terminated coverage, and so the jury was improperly instructed on that point.

## III. DISCUSSION

■■■ We conclude that the superior court erred by imposing a non-statutory duty of care and due diligence to inform the insured of terminated coverage and therefore do not reach Blood's argument that the court erred by including causation as an element in his claim for breach of such a duty. Because we also conclude that the superior court properly found KMI to have satisfied its statutory notice obligations, we affirm the judgment in favor of KMI and Progressive.[17]

### A. KMI Met Its Statutory Notice Obligations.

■■ Alaska Statute 21.36.220 requires an insurer to notify an insured before terminat-

15. *Id.* at 1257.

16. *Id.* at 1258.

17. In this appeal Blood also attacks some of the superior court's evidentiary rulings in the coverage trial. Our conclusion that the superior court erred by imposing a non-statutory duty in this case renders the coverage trial superfluous because it was conducted exclusively to determine whether KMI breached the non-statutory duty. We therefore reach no conclusion on Blood's evidentiary claims.

Blood also argues that "AS 28.20.440(d) requires that Progressive and KMI have obtained James Blood's current address" upon renewal of his policy. But since he did not raise this point

in the superior court on remand, as by requesting a jury instruction or moving for a directed verdict, it has been waived. *Willoya v. State, Dep't of Corrections*, 53 P.3d 1115, 1120 (Alaska 2002). Citing *Sea Lion Corp. v. Air Logistics of Alaska*, 787 P.2d 109, 115 (Alaska 1990), Blood also argues that the point should be reviewed because it is "closely related to ... the address and notice issues actually litigated and presents an issue of law not dependent on any new or controverted facts." But the issue is not merely one of law; instead, it requires resolution by a jury. As we observed in *Blood I*, "assuming a jury could find that KMI was negligent for failing to ask for Blood's new address, we cannot hold that a jury could only reach this result." 68 P.3d at 1258. Thus Blood's *Sea Lion Corp.* argument lacks merit.

ing coverage or failing to renew a policy.[18] According to AS 21.36.260, notice under .220 or .240 is ineffective unless the insurer "(1) mail[s] the notice by first class mail to the last known address of the insured; and (2) obtain[s] a certificate of mailing from the U.S. Postal Service." The superior court found KMI to have substantially complied with section .260 as a matter of law. We affirm this decision because the evidence is such that no other decision is reasonably possible.[19]

■ Blood does not dispute that Progressive mailed several notices to his former address. Progressive mailed each notice via first class mail. The first two notices indicated that Blood's policy would lapse if payment was not received before May 5, 1997. The third, mailed May 5, stated that his coverage was terminated effective May 16. Although Progressive sent these notices to an address at which Blood no longer resided, Blood admits that it was the only address he ever provided to KMI or Progressive. On these facts, the requirement that notice of cancellation or nonrenewal be mailed to Blood's last known address has plainly been satisfied.

Alaska Statute 21.36.260(2) also requires an insurer to obtain a certificate of mailing, and KMI appears not to have complied with this subsection. KMI offered no proof at the coverage trial of having obtained a certificate of mailing. Blood contends that the missing certificate renders KMI's termination of his insurance ineffective. But, again, Blood does not dispute that Progressive mailed notice to him at his old address. The returned letters were introduced as evidence in the first trial and are in the record before us. A certificate of mailing from the U.S. Postal Service serves only as proof of mailing. When, as here, returned mail directly establishes that an insurer has mailed notice, the purpose of AS 21.36.260(2)—establishing proof of mailing—is accomplished. In this circumstance compliance with the certificate of mailing requirement may be excused.[20] To hold otherwise would be to put form over substance.

For these reasons, we affirm the superior court's conclusion that KMI substantially complied with the notice requirements under AS 21.36.260.

### B. The Superior Court Erred by Holding KMI to a Separate Duty of Care.

■ The superior court's conclusion that an insurer must satisfy a duty to "exercise reasonable care" that is separate from AS 21.36.260 resulted from an inference the court drew from our first opinion. Noting Blood's legal theory, we said that "Blood relies on *Jefferson v. Alaska 100 Insurance., Inc.*[21] in arguing that an insurance agent has a 'duty to exercise reasonable care, skill, and diligence ... to inform the insured of termination of coverage.'"[22] On remand, the superior court concluded that we agreed with Blood's theory. But because in *Blood I* the superior court had denied Blood's summary judgment motion due to disputed material facts, the validity of his legal theory was not an issue before us. Instead of ruling on it, we said that "*[e]ven if* Blood is correct that KMI and Progressive owed him such a

---

18. AS 21.36.220(a). There is some dispute between the parties as to whether KMI terminated Blood's insurance policy or simply failed to renew the policy. Yet the distinction makes no difference here because AS 21.36.260 applies whenever "notice is required from an insurer under [AS 21.36]" and therefore sets the same requirements regardless of whether notice is due under AS 21.36.220 for terminated insurance or AS 21.36.240 for non-renewed insurance.

19. *See Bennett v. Hedglin*, 995 P.2d 668, 672 (Alaska 2000) (noting that courts may decide facts as a matter of law "when 'the evidence is such that there can be no reasonable difference of opinion.'") (quoting *Ruhlig v. American Cmty. Mut. Ins. Co.*, 696 N.E.2d 877, 880 (Ind.App. 1998)).

20. *See Travelers Indem. Co. v. Guess*, 243 Ga. 559, 255 S.E.2d 55, 56 (1979) (concluding that written notice of cancelled insurance mailed to and actually received by the insured is effective even if the insurance company fails to obtain a post office receipt as the governing statute requires because "where it is admitted such notice was received, the purpose of the statute has been accomplished").

21. 717 P.2d 360, 364 (Alaska 1986).

22. *Blood I,* 68 P.3d at 1258 (alteration in original).

duty, there remains the question whether the defendants exercised due diligence." [23]

According to Blood, the superior court's mistaken belief that *Blood I* imposes an extra duty of care is harmless because the duty can be found elsewhere in our case law. He renews his argument from *Blood I* that *Jefferson* imposes a "duty to exercise reasonable care, skill, and diligence ... to inform the insured of termination of coverage." [24] But this reading of *Jefferson* conflates the two duties discussed in that case. We noted in *Jefferson* that an insurer's "duty to use reasonable diligence to procure insurance *is coupled* with an equally important duty to inform the insured of cancellation." [25] The two duties are distinct. And while the duty to procure insurance requires "reasonable diligence," *Jefferson* does not state or imply that the duty to inform the insured of cancellation requires more than compliance with AS 21.36.260.[26]

Blood relies on *Rosenberg v. Smidt,*[27] as an alternative source for the extra duty of care. In that case, we considered the phrase "last known address" as it is used in AS 34.20.070(c),[28] which requires a deed of trust trustee to mail notices of default to the last known addresses of certain interested parties before a nonjudicial foreclosure sale of real estate. In *Rosenberg* the owners of real estate scheduled for a foreclosure sale did not receive notice mailed to their former address.[29] They sued and argued that subsection .070(c) required an affirmative effort on the part of the trustee to determine their correct address.[30] We agreed, holding that under AS 34.20.070(c) "the last known address is that address most likely to give the affected party notice. The trustee is obligated to exercise due diligence to determine that address. Failure to impose such a re-

quirement," we reasoned, "would not balance adequately the competing interests involved." [31]

Blood argues that *Rosenberg's* definition of "last known address" applies to that phrase as it is used in AS 21.36.260.[32] Under this theory, KMI was bound to both follow the specific terms of section .260, and satisfy an extra duty to use reasonable care and due diligence to determine Blood's correct address. But we reject the argument because real estate deed of trust foreclosures are not comparable to the termination or nonrenewal of liability insurance policies.

As we noted in *Rosenberg,* the law generally regards real estate forfeitures to be abhorrent "and will seize upon slight circumstances to relieve a party therefrom." [33] No similar doctrine attends the cancellation or nonrenewal of policies of insurance, especially for nonpayment of premiums. Relatedly, the equity of the owner of real property that is subject to a deed of trust is often substantial. By contrast, the insured under a liability insurance policy typically has received what he has paid for, and stands to lose no equity interest. Moreover, the owner of real estate, as in *Rosenberg,* may not actually be in default and thus may have no notice that a foreclosure will occur. But the insured is typically aware that his insurance will terminate when premiums are not paid, even without notice from the insurer. In addition, a long period of time often passes between the execution of a deed of trust, or the establishment of subordinate interests to property subject to a deed of trust, and a deed of trust foreclosure. Thus it is to be anticipated that the addresses of owners and other parties in interest will have changed and addresses on file may not be accurate. This is much less

---

23. *Id.* (emphasis added).

24. *Blood I,* 68 P.3d at 1258 (quoting *Jefferson,* 717 P.2d at 364).

25. *Jefferson,* 717 P.2d at 364 (emphasis added).

26. *Id.*

27. 727 P.2d 778 (Alaska 1986).

28. *Id.* at 780.

29. *Id.* at 779.

30. *Id.* at 780.

31. *Id.* at 783.

32. *See* AS 21.36.260 ("The insurer shall ... mail the notice ... to the last known address of the insured.").

33. 727 P.2d at 783.

likely to be the case with respect to liability insurance where policies are typically issued on an annual or semi-annual basis. Further, compared to cancellation or nonrenewal of liability insurance policies, a nonjudicial foreclosure of real estate under a deed of trust is a relatively rare event. Requiring insurers to track down the new addresses of its insured would impose a significant burden on a routine transaction, whereas real estate foreclosures are much less routine. For these reason we decline to extend the holding of *Rosenberg* to notices required under AS 21.36.260.

Our conclusion on this point renders Blood's causation arguments moot. Because we hold that KMI owed no separate duty of care, we need not consider whether it was appropriate for the superior court to instruct the jury that coverage could only be found if a breach of that duty caused Blood's loss of coverage.

## IV. CONCLUSION

The coverage trial in this case proceeded under an erroneous legal theory because the superior court held KMI to a non-statutory duty that does not exist. Yet because the jury returned a verdict in favor of KMI and we conclude that KMI met its notice obligations under AS 21.36.260, we AFFIRM the judgment below.