*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> Appellant, <br><br> v. <br><br> KELUCO GENERAL CONTRACTORS, INC., COUNTRY MUTUAL INSURANCE COMPANY and COUNTRY MUTUAL, and GRETCHEN SANTERRE, <br><br> Appellees. | Supreme Court No. S-18828 <br><br> Superior Court No. 3AN-19-04881 CI <br><br> O P I N I O N <br><br> No. 7774 – June 27, 2025 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Una S. Gandbhir, Judge.

Appearances: Thomas Lether, Lether Law Group, Seattle, Washington, for Appellant. Debra J. Fitzgerald and Jonathon A. Katcher, Anchorage, for Appellee Keluco General Contractors. Brewster H. Jamieson, Lane Powell LLC, Anchorage, for Appellee Gretchen Santerre. Notice of nonparticipation filed by Rebecca J. Hozubin, Hozubin, Moberly & Associates, Anchorage, for Appellee Country Mutual Insurance Company and Country Mutual.

Before: Carney, Borghesan, Henderson, and Pate, Justices. [Maassen, Chief Justice, not participating.]

HENDERSON, Justice.

## I.   INTRODUCTION

A general contractor secured a workers' compensation and employers' liability policy through an insurer. The policy was set to last one year. Following that one-year term, an employee of the general contractor was injured at work. The general contractor attempted to make a claim on its workers' compensation policy and learned that the policy had expired. The insurer claimed to have sent a notice of nonrenewal to the general contractor and its insurance agent prior to the expiration of the policy, pursuant to state law. But the general contractor claimed not to have received the notice of nonrenewal.

Upon discovering it did not have an active workers' compensation insurance policy, the general contractor sued its insurance agent for failing to inform it of the nonrenewal notice, and the insurance agent filed a third-party complaint against the insurer under an allocation of fault theory. Following multiple rounds of summary judgment motions, the superior court granted partial summary judgment against the insurer and in favor of the general contractor, ruling that the insurer failed to send the general contractor notice of the nonrenewal of its policy in the manner required by statute and, as a result, breached its contract with the general contractor.

The insurer appeals, arguing the court made various procedural and substantive errors in its rulings. Seeing no error in the court's orders on summary judgment, we affirm those rulings. But we reverse the court's determination of when prejudgment interest began to accrue, and remand for recalculation of prejudgment interest.

## II.  FACTS AND PROCEEDINGS

### A.   Keluco's Insurance Policy, Worker Injury, And Initiation Of Suit

On March 15, 2016, Travelers Property Casualty Company of America issued a workers' compensation insurance plan to Keluco General Contractors, Inc. The plan was set to expire on March 5, 2017. Keluco secured the Travelers insurance

policy through its insurance agent, Gretchen Santerre. At the time, Santerre worked for Country Mutual Insurance Company.

Around January 7, 2017, Travelers mailed a renewal notice to Keluco in advance of its policy expiration.[1] Travelers also mailed the renewal notice to Santerre. The notice advised that "[i]n order to avoid a lapse in coverage, [a] renewal payment must be received prior to the expiration date shown on [the] bill." Santerre testified that she also emailed this renewal notice to Keluco's bookkeeper after receiving it in the mail; however, she accidentally sent the notice to the wrong email address. Keluco claimed that it never received the renewal notice, either by mail from Travelers or by email from Santerre. Keluco's workers' compensation policy thereafter lapsed in March 2017.

On September 20, 2017, a Keluco employee suffered injuries in a work-related accident. Following the accident, Keluco learned that its workers' compensation insurance policy had lapsed. Shortly thereafter, the employee pursued workers' compensation claims against Keluco. The State also pursued civil penalties against Keluco due to its lapse in coverage.

In January 2019 Keluco sued Santerre and her employer, Country Mutual. Keluco alleged negligence by Santerre for breaching her duty to communicate with Keluco about its insurance plans. It also alleged that Country Mutual, her employer, was vicariously liable. In an amended answer to the complaint, Santerre filed a third-party complaint seeking to allocate fault against Travelers, alleging that Travelers failed to notify her that Keluco had not renewed its policy. Travelers initially answered by denying all substantive allegations. Travelers then amended its answer to file a

---

[1]       We construe these facts in Travelers' favor when reviewing the superior court's grant of summary judgment against the insurance company. *See Mathis v. Sauser*, 942 P.2d 1117, 1120 (Alaska 1997) (providing that we "must view the facts in the light most favorable to the non-moving party").

counterclaim for "contribution" against Santerre.  Keluco was permitted to amend its complaint in August 2022 to allege direct claims of negligence and breach of contract against Travelers.

B.     **Summary Judgment Motions**

The parties engaged in extensive summary judgment motion work. Among the motions was a summary judgment motion filed by Travelers, contending in part that Travelers met its duty to provide Keluco with notice prior to the expiration of its policy.  The superior court denied Travelers' motion, ruling that genuine issues of material fact related to the sufficiency of Travelers' renewal notice prevented summary judgment at that time.

Keluco later filed a motion for partial summary judgment against Travelers, arguing that Travelers failed to mail its notice of renewal in the manner required by statute.  In particular, Keluco claimed that Travelers' process for mailing the notice violated AS 21.36.260[2] in that the insurer failed to obtain a certificate of mailing from the United States Postal Service (USPS).

Travelers opposed summary judgment, arguing that its process for mailing required notices was sufficient under the law.  Travelers explained that it sent the notice from the Norcross Data Center, a USPS designated Detached Mail Unit (DMU).  As defined by Travelers' expert witness, a DMU is "an area within a facility where postal employees perform mail verification, acceptance, dispatch, and other postal functions."

Travelers contended that its internal mailing records, which were submitted to USPS, but required no verification by USPS, satisfied the proof-of-mailing requirement.  The company explained that it sends its mail, including the notice, as

---

[2]     Alaska Statute 21.36.260 reads:  "If a notice is required from an insurer under this chapter, the insurer shall . . . mail the notice by first class mail to the last known address of the insured and obtain a certificate of mailing from the United States Postal Service."

"First Class with Affidavit" and uses a version of USPS form 3877 as its evidence of mailing. USPS Form 3877 qualifies as a Certificate of Mailing when a stamp is affixed to the form, "certified" is checked as the type of mail on the form, and the postmaster has signed the bottom of the form as the receiving employee. Here, Travelers produced a USPS Form 3877 denoting that mail was addressed to Keluco during the relevant time period, but the form lacked the requisite certificate of mail stamp and contained no certification by a postmaster of receipt of mail.

The court granted Keluco's motion for partial summary judgment regarding Travelers' noncompliance with AS 21.36.260. The court found that neither party contested the facts alleged by Travelers concerning its internal mailing procedures, and concluded that, contrary to the requirements of AS 21.36.260, those internal mailing procedures did not include obtaining a certificate of mailing from USPS.

Keluco filed an additional summary judgment motion, arguing that because Travelers failed to obtain the certificate of mailing required by AS 21.36.260 when sending its renewal notice, it also violated AS 21.36.240, the law governing an insurer's failure to renew a policy, and breached its contract with Keluco. Travelers opposed, arguing among other things that Keluco and the court had misinterpreted the requirements of AS 21.36.260.

The court granted summary judgment, ruling that Travelers violated AS 21.36.240 and breached its contract with Keluco. Regarding breach of contract, the court determined that Travelers breached its insurance contract with Keluco in two ways: first, by breaching the portion of the contract known as the Alaska Cancellation and Nonrenewal Endorsement (Alaska Endorsement), which made compliance with both AS 21.36.260 and AS 21.36.240 a condition of the contract; and second, by failing to defend Keluco against its employee's workers' compensation claim.

**C.** **Dismissal Of Santerre And Country Mutual As Settling Parties And Dismissal Of Travelers' Contribution Counterclaim Against Santerre**

After both Santerre and Country Mutual reached settlement agreements with Keluco, they moved to be dismissed from the case. Travelers did not oppose the dismissal outright, but rather sought to preserve its ability to bring claims for contribution and allocate fault to both parties. The court issued a notice of intent to grant Country Mutual's motion unless any opposition or other response was filed.

Santerre subsequently sought dismissal of the one claim still pending against her, Travelers' contribution claim. Santerre argued that pursuant to AS 09.17.080, Travelers would still be permitted to allocate fault to her as a settled party, regardless of Travelers' contribution claim.[3] Travelers disagreed and argued that in order for it to assign comparative fault to Santerre in relation to Keluco's claims against it, Santerre must remain a party.

The court granted Santerre's motion and dismissed Travelers' third-party claim for contribution against her with prejudice. Consequently, Keluco voluntarily dismissed its own negligence claim against Travelers, leaving its breach of contract claim before the court.

**D.** **Keluco And Travelers' Stipulation And Final Judgment**

Keluco and Travelers thereafter entered and filed a stipulation to final judgment. The parties stipulated to the amount of damages owed by Travelers, including that Travelers would receive an offset from Keluco's settlement with Santerre. The stipulation provided that each party waived its right to appeal the agreements reflected therein, but reserved the parties' right to appeal any decision by the court on prejudgment interest. The stipulation also reserved Travelers' right to appeal all other previous decisions and orders entered by the superior court.

---

[3] Alaska Statute 09.17.080 establishes that each party is only liable for its own proportion of fault on the basis of several liability.

The parties disagreed regarding the date from which prejudgment interest should run. Keluco argued that prejudgment interest began to run as of January 9, 2017, the date on which it alleged that Travelers first breached its contract by failing to obtain a certificate of mailing from the USPS for the renewal notice in question. Travelers moved for the prejudgment interest to begin running as of August 23, 2022, the date on which Keluco first sued Travelers. The court identified January 9, 2017, as the date upon which prejudgment interest began to accrue; it issued a final judgment using that date.

Travelers now appeals the superior court's rulings on summary judgment, its order dismissing Travelers' contribution claim against Santerre, and its determination of the date upon which prejudgment interest began accruing.

## III. STANDARD OF REVIEW

We review grants of summary judgment using our independent judgment.[4] We will affirm "if the evidence in the record fails to disclose a genuine issue of material fact and the moving party is entitled to judgment as a matter of law,"[5] and we may also "affirm the superior court's decision to grant summary judgment on 'any basis appearing in the record.' "[6]

"We interpret statutes 'according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its

---

[4]     *Ware v. Ware*, 161 P.3d 1188, 1192 (Alaska 2007).

[5]     *Id.* (quoting *Dayhoff v. Temsco Helicopters, Inc.*, 848 P.2d 1367, 1369 (Alaska 1993)).

[6]     *Simmons v. Ins. Co. of N. Am.*, 17 P.3d 56, 59 (Alaska 2001) (quoting *Parson v. Marathon Oil Co.*, 960 P.2d 615, 618 (Alaska 1998)).

purpose.' "[7]  When interpreting statutes, we adopt the rule of law most persuasive in light of reason, precedent, and policy.[8]

The date that "prejudgment interest begins to accrue is a question of law which we review using our independent judgment."[9]  We review the superior court's findings of fact for clear error.[10]

## IV.  DISCUSSION

We first review the superior court's summary judgment rulings and determine that the court properly granted summary judgment because, even accepting facts as alleged by Travelers, the insurance company failed to provide its renewal notice to Keluco in the manner required by Alaska law.  We then consider and affirm the superior court's dismissal of Travelers' contribution claim against Santerre.  Finally, we reverse the superior court's decision regarding when prejudgment interest began to run, concluding that such interest began to accrue at the time Keluco's employee was injured and Travelers failed to provide workers' compensation coverage.

### A.    The Superior Court Did Not Err In Granting Summary Judgment Regarding Travelers' Violation Of AS 21.36.240 And .260 And Its Breach of Contract.

The statutes relevant on appeal — AS 21.36.240 (failure to renew) and AS 21.36.260 (proof and method of mailing notice) — are contained within Title 21, Chapter 36 of the Alaska Statutes and serve the purpose of preventing the use of unfair

---

[7]      *Mun. of Anchorage v. Adamson*, 301 P.3d 569, 573 (Alaska 2013) (quoting *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1036 (Alaska 2008)).

[8]      *Id.* (quoting *Lewis-Walunga v. Mun. of Anchorage*, 249 P.3d 1063, 1067 (Alaska 2011)).

[9]      *Liimatta v. Vest*, 45 P.3d 310, 313 (Alaska 2002) (quoting *Johnson v. Olympic Liquidating Tr.*, 953 P.2d 494, 497 (Alaska 1998)).

[10]      *DeNardo v. ABC Inc. RVs Motorhomes*, 51 P.3d 919, 922 (Alaska 2002) (citing *Coffland v. Coffland*, 4 P.3d 317, 320 (Alaska 2000)).

claim settlement practices by people engaged in the insurance industry.[11] Chapter 36 regulates the insurance industry's trade practices "by defining or providing for determination of all the practices in [Alaska] that constitute an unfair method of competition or an unfair or deceptive act or practice and by prohibiting them."[12]

Under AS 21.36.240(a), "[a]n insurer may only fail to renew a personal insurance policy on the policy's annual anniversary," and in order to do so for a business policy, it must provide written notice of nonrenewal "under AS 21.36.260 . . . at least 45 days . . . before the date the policy expires." Alaska Statute 21.36.260 states in relevant part that when a notice of nonrenewal is required under Chapter 36, "the insurer shall . . . mail the notice by first class mail to the last known address of the insured and obtain a certificate of mailing from the United States Postal Service." "If notice of nonrenewal is not given as required by [Chapter 36], the existing policy shall continue until the insurer provides notice for the period required by this section."[13]

Before the superior court and before us, Travelers has acknowledged that a "*Certificate of Mailing* provides evidence that you sent an item when you say you did." The certificate "[c]an be paid for by affixing postage stamps, meter stamps, or permit imprints." A certificate of mailing can be combined with a variety of mail services, including first class mail. A person or entity seeking a certificate from USPS must fill out certain forms provided by USPS. One form that may be used is Form 3877. USPS also allows customers to use "privately printed versions" of Form 3877 as long as they are approved by USPS.

Here, the evidence produced by the parties on summary judgment establishes that Travelers did not obtain a certificate of mailing from USPS. Travelers used a USPS Form 3877 to internally record and verify its own mailings, but did not

---

[11]    *See* AS 21.36.125.

[12]    AS 21.36.010.

[13]    AS 21.36.240(c).

seek a certificate or other verification of mailing from USPS. The relevant USPS Form 3877 provided by Travelers contains a blank square where a USPS employee would sign if certifying the mailing. Similarly, a blank square in the form reads "Affix Stamp Here (if issued as a certificate of mailing)." There is no stamp affixed, and Travelers acknowledges that it did not pay to obtain a certificate of mailing from USPS.

In arguing that it complied with AS 21.36.260, Travelers seems to rely on a combination of its own use of the Form 3877 and an internal affidavit in which one of its employees attested that the relevant notice "was submitted to the United States Postal Service" and mailed out on January 9, 2017. Travelers contends that its internal procedures should be deemed equivalent, under AS 21.36.260, to obtaining a certificate of mailing from USPS. But Travelers' internal procedures are not the same as obtaining independent verification through a certificate of mailing from USPS.

The legislative history underlying AS 21.36.260's current statutory language lends further support to Keluco's argument that Travelers cannot substitute a self-certification for a certificate of mailing from USPS. The original 1970 version of the statute simply stated that "[p]roof of mailing of notice of cancellation, or of nonrenewal or of reasons for cancellation, to the named insured at the address shown in the policy, is sufficient proof of notice."[14] But in 1987, the Legislature added the existing requirement that an insurer shall "obtain a certificate of mailing from the U.S. Postal Service" when sending notice under the Chapter 36.[15] While Travelers' internal certificate may have been sufficient to comply with the original version of the statute, it falls short of the statute's present requirements.

Travelers argues further that even if the certificate of mailing it obtained is not identical to the one required by statute, it "substantially complied with

---

[14] Ch. 28, § 1, SLA 1970.

[15] Ch. 29, § 41, SLA 1987.

AS 21.36.260" because the "requirements of notice ha[ve] been plainly met" through its internal procedures. Keluco responds that deferring to Travelers' internal mailing procedures would undermine Alaska's proof-of-mailing laws, and particularly the legislature's decision to amend the relevant statute in 1987. Keluco contends that Travelers simply "decided that it would be cheaper to violate those laws than it would be to comply with them."

Both parties look to our decision in *Blood v. Kenneth A. Murray Insurance, Inc.*, to support their positions regarding substantial compliance. In that case, Progressive Insurance mailed several notices of nonrenewal to the last known address of the insured, Blood, by first class mail, but did not obtain a certificate of mailing from USPS.[16] Because Blood had moved, but had not notified his insurer of his change in address, the letters were returned by USPS to the sender, and — crucially — Blood "d[id] not dispute that Progressive mailed several notices to his former address" at trial.[17] We held that where USPS had returned the notices in question to Progressive and Blood did not dispute that they were sent to his old address, proof of mailing had been accomplished, even though a certificate of mailing had not been obtained:

> Blood contends that the missing certificate renders [Kenneth Murray Insurance]'s termination of his insurance ineffective. But, again, Blood does not dispute that Progressive mailed notice to him at his old address. The returned letters were introduced as evidence in the first trial and are in the record before us. A certificate of mailing from the U.S. Postal Service serves only as proof of mailing. When, as here, returned mail directly establishes that an insurer has mailed notice, the purpose of AS 21.36.260(2) — establishing proof of mailing — is accomplished. In this circumstance compliance with the certificate of mailing

---

[16]   *Blood v. Kenneth A. Murray Ins., Inc.*, 151 P.3d 428, 432 (Alaska 2006).

[17]   *Id.*

requirement may be excused.  To hold otherwise would be to put form over substance.[18]

Here, unlike in *Blood*, there is no verification from USPS itself that the mail in question was sent.  In *Blood*, the return of the letters served as a verification by USPS that the notices had been sent, whereas here there is no such evidence of mailing beyond Travelers' own internal procedures.  Additionally, as observed by the superior court: "The parties in *Blood* did not dispute whether the insurer sent a mailing at all; no such consensus exists between the parties in the instant case."

In light of Travelers' failure to obtain a USPS certificate of mailing when it sent its renewal notice to Keluco, and the absence of any form of verification from USPS that Travelers sent the notice as it claims, we affirm the superior court's order granting summary judgment regarding Travelers' violation of AS 21.36.260.[19]  And as we agree with the court that Travelers violated AS 21.36.260, we also agree that Travelers violated AS 21.36.240[20] and that it breached its contract with Keluco.

---

[18]     *Id.* (footnotes omitted).  While the *Blood* decision refers to AS 21.36.260 paragraph (2), the relevant section today is AS 21.36.260 paragraph (1).  The statute was amended in 2006 to consolidate the two components of the notice by mail requirement (1 – first class mail, and 2 – certificate of mail from USPS) into one element, and add a requirement for when notice is sent by electronic means, which is AS 21.36.260 paragraph (2) today. Ch. 80, § 33, SLA 2006.

[19]     Travelers additionally argues that the court erred in granting summary judgment, given its earlier denial of Travelers' own summary judgment motion because of disputes of material fact regarding whether Travelers complied with AS 21.36.260.  The court, however, decided Keluco's summary judgment motion based in part upon evidence newly provided by Travelers itself, which demonstrated that the company did not obtain a certificate of mailing from USPS.

[20]     Travelers interchangeably refers to AS 21.36.220 (notice of cancellation statute) and AS 21.36.240 (failure to renew statute) as the underlying statute at issue, writing that both "are simply timing statutes advising the insurer as to when they need to send the notice" and therefore downplaying any distinctions between the statutes, including on the basis of their relevance to this appeal.  Nevertheless, there are

Alaska Statute 21.36.240 requires that notices of nonrenewal be mailed to insureds in accordance with AS 21.36.260.[21]

If an insurer fails to comply with AS 21.36.260 and AS 21.36.240, the insurance policy will continue until the insurance company provides the requisite notice.[22] Travelers' failure to comply with the statutes means that its policy with Keluco was still in effect on the date of the workplace injury. The parties' policy also required Travelers to "pay promptly when due the benefits required of [Keluco] by the workers['] compensation law." We therefore affirm the superior court's determination that Travelers breached its contract with Keluco in two ways — first, by breaching the Alaska Endorsement which incorporated both AS 21.36.260 and AS 21.36.240 into the contract, and second by failing to provide the workers' compensation coverage provided by the policy.

B. **The Superior Court Did Not Err When It Dismissed Travelers' Contribution Counterclaim Against Santerre.**

Travelers argues that that the superior court erred in dismissing its contribution counterclaim against Santerre because "Travelers was no longer able to point to Santerre as a party that contributed to Keluco not receiving the Notice sent by Travelers." Travelers contends that allowing Santerre to settle Keluco's claims against her, and then allowing her to be dismissed from the case once Keluco filed direct claims against Travelers, hindered its ability to allocate fault to Santerre.

But the superior court's decisions did not preclude Travelers from allocating fault to Santerre. Alaska law provides for allocation of fault to a party who

---

important distinctions between the two, and the superior court properly addressed this situation under AS 21.36.240.

[21]     AS 21.36.240(a).

[22]     AS 21.36.240(c).

has settled out of a case.[23]  To the extent that Travelers' contribution claim was its vehicle for seeking a permissible allocation of fault against Santerre, the superior court made no ruling that precluded Travelers from allocating fault.  And Travelers never thereafter sought to allocate fault to Santerre, or sought a further ruling from the superior court regarding its ability to allocate fault.  Rather than pursue an avenue involving allocation of fault, Travelers stipulated to final judgment.  We see no error by the court under those circumstances.  We affirm the superior court's dismissal of Travelers' contribution counterclaim against Santerre.

### C.  It Was Error To Determine That Prejudgment Interest Began To Accrue As Of January 9, 2017.

As stipulated by Keluco and Travelers, the superior court awarded Keluco $2,774,593.65 in principal damages.  It also awarded prejudgment interest on those damages at an annual rate of 7.5% beginning January 9, 2017, until the court's final decision on September 7, 2023.  Prejudgment interest amounted to $1,385,961.72.  Based on the parties' stipulation, the court offset the final judgment by the $247,731.07 that Keluco received pursuant to its settlement with Santerre.

"In contract actions, rights to prejudgment interest generally arise on the date" the agreement was breached[24] rather than "the time that actual damages are sustained as a consequence of the breach."[25]  In the workers' compensation context, however, "interest should be awarded from the date that an employee was originally entitled to receive [workers' compensation] benefits."[26]  "The purpose of awarding prejudgment interest is not to penalize the losing party, but rather to compensate the

---

[23]  AS 09.17.080(a).

[24]  *Morris v. Morris*, 724 P.2d 527, 529 (Alaska 1986).

[25]  *K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 725 (Alaska 2003) (quoting *Howarth v. First Nat'l Bank of Anchorage*, 540 P.2d 486, 490-91 (Alaska 1975)).

[26]  *Circle De Lumber Co. v. Humphrey*, 130 P.3d 941, 951 (Alaska 2006).

successful claimant for losing the use of the money between the date he or she was entitled to it and the date of judgment."[27] But "[a]n award of prejudgment interest" is unjust if it "result[s] in double recovery,"[28] such as where the prejudgment interest award duplicates a separate award compensating for the same category of financial loss.[29]

Travelers asserts that the court erred in determining prejudgment interest because interest should have begun accruing on August 23, 2022, the date Keluco first filed direct claims against Travelers. It also highlights that an award of prejudgment interest is unjust if it results in double recovery, and reasons that using the January 9, 2017 accrual date "would allow Keluco to recover prejudgment interest [back] to a time before it had a claim, before the policy expired, before its damages were ascertainable and before Travelers had notice." Keluco, meanwhile, argues that the court's determination of prejudgment interest should be affirmed because it reflects the time period that Travelers first breached the parties' contract, when it failed to obtain a certificate of mailing from USPS on that date. Alternatively, it argues that "the very latest prejudgment interest began to accrue was September 20, 2017, when Travelers failed to defend Keluco and pay [its employee's] workers' compensation benefits that were due from [the] date of injury."

Ultimately, we hold that prejudgment interest began to accrue on September 20, 2017, the date that the employee "was originally entitled to receive

---

**27**     *Morris*, 724 P.2d at 529 (quoting *Bevins v. Peoples Bank & Tr. Co.*, 671 P.2d 875, 881 (Alaska 1983)).

**28**     *Beech Aircraft Corp. v. Harvey*, 558 P.2d 879, 888 (Alaska 1976).

**29**     *See ERA Helicopters, Inc. v. Digicon Alaska, Inc.*, 518 P.2d 1057, 1063 (Alaska 1974) ("[T]o allow prejudgment interest from the date of the loss plus a separate award for the same period of time for damages attributable to loss of use constitutes a double recovery.").

[workers' compensation] benefits" as a result of his workplace injuries.[30] This represents the date that Travelers breached its contract with Keluco, as the policy required Travelers to "pay promptly when due the benefits required of [Keluco] by the workers['] compensation law." Travelers' preferred date of August 23, 2022, falls well after it breached its contract with Keluco. And Keluco's preferred date of January 7, 2017, is well before Keluco's employee became entitled to receive benefits. September 20, 2017, is both the date upon which workers' compensation benefits initially became due and the date of Travelers' ultimate breach of its insurance contract with Keluco. It is therefore the appropriate date from which to run prejudgment interest in both the workers' compensation and breach of contract contexts.[31]

## V.  CONCLUSION

We AFFIRM the superior court's decisions granting summary judgment in Keluco's favor as to Travelers' violation of AS 21.36.260 and AS 21.36.240 and its resulting breach of contract. We also AFFIRM the court's dismissal of Travelers' contribution claim against Santerre. We REVERSE the court's determination of when prejudgment interest began to run and REMAND for the court to recalculate prejudgment interest with accrual of such interest beginning on September 20, 2017.

---

[30]  *Circle De Lumber Co.*, 130 P.3d at 951.

[31]  And, as Keluco was only awarded principal damages, to compensate it for its workers' compensation payment, and prejudgment interest, to compensate it for losing the use of the money, there is no risk of double recovery with September 20, 2017 as the accrual date. The two categories do not compensate for the same category of financial loss.