*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JANET HUDSON, on behalf of herself and all others, | ) ) ) | Supreme Court Nos. S-14740/14826 (Consolidated) |
| Petitioner, | ) ) | Superior Court No. 3AN-11-09196 CI |
| v. | ) ) | O P I N I O N |
| CITIBANK (SOUTH DAKOTA) NA, ALASKA LAW OFFICES, INC., and CLAYTON WALKER, | ) ) ) ) | No. 7141 – December 16, 2016 |
| Respondents. | ) ) | |
| _____ | ) ) | |
| CYNTHIA STEWART, on behalf of herself and all others who are similarly situated, | ) ) ) ) | Superior Court No. 3AN-11-12054 CI |
| Petitioner, | ) ) | |
| v. | ) ) | |
| MIDLAND FUNDING LLC, ALASKA LAW OFFICES, INC., and CLAYTON WALKER, | ) ) ) ) | |
| Respondents. | ) ) | |
| _____ | ) | |

Petition for Review from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: James J. Davis, Jr., and Goriune Dudukgian, Northern Justice Project LLC, Anchorage, and Matthew W.H. Wessler, Public Justice, P.C., Washington, District of Columbia, for Petitioners. Jon S. Dawson and Elizabeth P. Hodes, Davis Wright Tremaine LLP, Anchorage, for Respondents Midland Funding LLC and Citibank (South Dakota) NA. Marc G. Wilhelm, Richmond & Quinn, Anchorage, for Respondents Alaska Law Offices, Inc. and Clayton Walker.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.
MAASSEN, Justice, with whom FABE, Chief Justice, joins, dissenting.

## I.    INTRODUCTION

Two credit card holders defaulted on their accounts, and the issuing bank[1] elected to litigate debt-collection actions. After courts entered default judgments against both card holders, the card holders filed new and separate suits alleging that the bank violated the Unfair Trade Practices and Consumer Protection Act (UTPA) during the earlier debt collection actions. The bank moved in each case to arbitrate the UTPA claims, and the superior court stayed the UTPA litigation and ordered arbitration. We must decide whether the bank waived its right to demand arbitration of the subsequent UTPA claims by litigating the debt-collection claims. Because we conclude that the two claims were not sufficiently closely related, we hold that the bank did not waive its right to demand arbitration of the separate UTPA claims. But we also conclude that it was error for the superior court to interpret the arbitration agreement on the question of the

---

[1]    In both cases Citibank (South Dakota) NA issued the cards, but in Stewart's case Midland Funding LLC purchased the account from Citibank.

availability of statewide injunctive relief: the interpretation of an arbitration agreement is in the first instance a matter for the arbitrator.

## II.   FACTS AND PROCEEDINGS

### A.   *Hudson v. Citibank*

In April 1999 Janet Hudson opened a Citibank credit card account. The original terms of the Card Agreement did not contain an arbitration clause. In 2001 Citibank mailed Hudson a "Change-in-Terms" form along with her periodic statement. The form included an arbitration clause that allowed either party to "elect mandatory, binding arbitration" of "any claim, dispute, or controversy" (Claims). The arbitration clause stated: "All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy . . . they seek. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party." The clause continued:

> At any time you or we may ask an appropriate court to compel arbitration of Claims, . . . even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

The clause also asserted that "[a]ny questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced." Finally, the clause stated that "Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis." Hudson was given the opportunity to opt out of the Change in Terms and did not.

Hudson fell behind on her payments, and in November 2010 Citibank — represented by Alaska Law Offices — filed a collection action in the Kenai District

Court seeking the $24,170.24 that Hudson owed. Hudson did not appear in the action, and the court entered a default judgment. Alaska Law Offices moved for attorney's fees under Alaska Rule of Civil Procedure 82, which allows the prevailing party in a default judgment to recover either its reasonable attorney's fees or 10% of the judgment, whichever is less.[2] Alaska Law Offices requested 10% attorney's fees, arguing that its actual attorney's fees for the default judgment were $4,834.05, exactly 20% of the recovery. The court granted Alaska Law Office's motion and awarded $2,417 in attorney's fees.

In August 2011 Hudson filed a class-action complaint in the superior court, alleging that Citibank, Alaska Law Offices, and Clayton Walker (an attorney at Alaska Law Offices) violated the UTPA by asking the court for attorney's fees in excess of the "reasonable" fee allowed under Rule 82. Hudson sought damages and prospective injunctive relief under the "private attorney general" provision of the UTPA. Citibank promptly moved to stay the action and to compel arbitration on an individual basis. The superior court granted Citibank's motion to compel arbitration, but held that Hudson could be awarded statewide injunctive relief by the arbitrator.

## B.    *Stewart v. Midland Funding LLC*

Cynthia Stewart opened a Citibank credit card account in 2002 with the same arbitration provision as Hudson's. Stewart fell behind on her payments, and in December 2010 Midland Funding, which had purchased Stewart's account from Citibank, initiated an action in Anchorage District Court to collect the debt. Alaska Law Offices represented Midland Funding in the proceeding. The district court entered default judgment against Stewart, who failed to appear. Alaska Law Offices argued that Midland Funding's actual attorney's fees in the case were $739.04, again 20% of the

---

[2]    Alaska R. Civ. P. 82(b)(1), (b)(4).

recovery, and asked for 10% attorney's fees under Rule 82. The district court awarded the requested fees.

Stewart later filed an action in the superior court alleging that Midland Funding and Alaska Law Offices violated the UTPA by using a contingency fee arrangement as their "reasonable" fees under Rule 82. The defendants moved to stay the action and to compel arbitration. In July 2012, the superior court stayed the action and compelled arbitration "according to the same terms ordered by this court in *Hudson v. Citibank*."

## C.    Petition for Review

Hudson[3] petitioned for review and we granted the petition on three issues: (1) whether Citibank waived its right to arbitrate the UTPA claims by litigating the debt-collection actions in court; (2) the extent of any waiver; and (3) whether the superior court erred in holding that the arbitrator could issue statewide injunctive relief.

## III.   STANDARD OF REVIEW

Citibank argues that waiver is a factual issue that should be reviewed deferentially, while Hudson argues that waiver is a mixed question of law and fact that should ultimately be reviewed de novo. There is conflicting Alaska precedent on the issue,[4] but it is clear that the majority of jurisdictions treat arbitration waiver as a mixed

---

[3]    For convenience, the parties will be referred to collectively as "Citibank" and "Hudson."

[4]    *Compare Airoulofski v. State*, 922 P.2d 889, 894 n.5 (Alaska 1996) (holding that waiver should be reviewed de novo when decided without trial on undisputed facts), *with Blood v. Kenneth Murray Ins. Co.*, 68 P.3d 1251, 1254 (Alaska 2003) (holding without elaborating that waiver is an issue of fact).

question of law and fact.[5]  We believe that the mixed question of law and fact standard accurately reflects the nature of the inquiry:  the superior court must find the pertinent facts — if they are in dispute — and then correctly apply the law to those facts.

Where the facts are not in dispute on appeal, as here, we must decide whether the superior court applied the correct legal standard to the undisputed facts.[6]  On questions of law we are "not bound by the lower court's decision."[7]  Rather, we apply de novo review, "adopting the rule of law that is 'most persuasive in light of precedent, reason, and policy.' "[8]

## IV.  DISCUSSION

For the reasons that follow we agree with the superior court that Citibank did not waive its right to arbitrate the UTPA claims by litigating the debt-collection actions, but we hold that the superior court erred when it decided the question whether the arbitrator could issue statewide injunctive relief — this question presents an issue of

---

[5]  *See, e.g.*, *La. Stadium & Exposition Dist. v. Merrill Lynch*, 626 F.3d 156, 159 (2d Cir. 2010); *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 44 (1st Cir. 2005) ("A determination that a party has waived its right to arbitrate is reviewed de novo, whereas the district court's findings of fact are subject to 'clear error' review."); *Hoover v. Am. Income Life Ins. Co.*, 142 Cal. Rptr. 3d 312, 319 (Cal. App. 2012) ("The waiver issue may be reviewed de novo when the question is whether the superior court properly applied the correct legal standard to the undisputed facts . . . ."); *LAS, Inc. v. Mini-Tankers USA, Inc.*, 796 N.E.2d 633, 636 (Ill. App. 2003) (holding that because the facts are not in dispute the court should review the arbitration waiver de novo and gathering federal cases holding the same).

[6]  *Guttchen v. Gabriel*, 49 P.3d 223, 225 (Alaska 2002) (citing *Foss Alaska Line, Inc. v. Northland Servs., Inc.*, 724 P.2d 523, 526 (Alaska 1986)).

[7]  *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979).

[8]  *Classified Emps. Ass'n v. Matanuska-Susitna Borough Sch. Dist.*, 204 P.3d 347, 352 (Alaska 2009) (quoting *Lexington Mktg. Grp., Inc. v. Goldbelt Eagle, LLC*, 157 P.3d 470, 472 (Alaska 2007)).

interpretation of the arbitration agreement that should be decided in the first instance by the arbitrator.

### A. Citibank Did Not Waive Its Right To Arbitrate Hudson's UTPA Claims.

#### 1. Federal law controls waiver by litigation conduct.

As a threshold matter, the parties dispute whether Alaska law or federal law should be applied to determine if Citibank waived its right to demand arbitration.[9] The answer to this question depends on which provision of the Federal Arbitration Act[10] provides the basis for waiver by litigation conduct. Hudson argues that waiver is a

---

[9]      Citibank also argues that the arbitrator should decide the question whether a party waived its right to arbitrate by participating in litigation. But if "the waiver turns on the significance of action taken in a judicial forum, 'the issue is one for the court, rather than the arbitrator, to decide.' " *Int'l Bhd. of Teamsters Local 959 v. King*, 572 P.2d 1168, 1174 (Alaska 1977) (quoting *Weight Watchers of Que., Ltd. v. Weight Watchers Int'l, Inc.*, 398 F. Supp. 1057, 1058-59 (E.D.N.Y. 1975)). This is the majority view among state and federal courts. *See River House Dev. Inc. v. Integrus Architecture, P.S.*, 272 P.3d 289, 295 (Wash. App. 2012) ("The weight of both federal authority under the Federal Arbitration Act, 9 U.S.C. §§ 1-14, and state authority under the current and former versions of the [Uniform Arbitration Act] treat litigation-conduct waiver as an issue for the court rather than an issue for the arbitrator, despite the U.S. Supreme Court's including waiver in its list of arbitrable procedural issues in *Howsam* [*v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)] . . . ."); *see also Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 3 (1st Cir. 2005) ("The issue of waiver of the right to arbitrate due to inconsistent activity in another litigation forum remains an issue for the court even after the *Howsam* and *Green Tree* holdings."); *Perry Homes v. Cull*, 258 S.W.3d 580, 587 (Tex. 2008) (noting that every federal circuit to consider the issue after *Howsam* has held that waiver by litigation conduct is still a decision for the court). Courts have reasoned that "[c]ontracting parties would expect the court to decide whether one party's conduct before the court waived the right to arbitrate," *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 F. App'x 462, 464 (5th Cir. 2004), because the court is in a much better position to decide whether conduct in its own courtroom amounted to waiver. *See Perry Homes*, 258 S.W.3d at 588.

[10]      9 U.S.C. §§ 1-14 (2012).

defense under § 2 of the Federal Arbitration Act (the savings clause), which calls for the application of state law.[11]  Citibank argues that waiver arises under § 3 (the default clause), which calls for the application of federal law.[12]

When it enacted the Federal Arbitration Act, "Congress intended to establish a uniform federal law over contracts which fall within its scope."[13]  Thus, "if the Arbitration Act is deemed applicable, federal law applies in construing and enforcing an arbitration clause, even in those cases in which jurisdiction is based on diversity."[14] The default clause — § 3 of the Federal Arbitration Act — directs a court to stay proceedings and order arbitration so long as the "the applicant for the stay is *not in default* in proceeding with such arbitration."[15]  If waiver by litigation conduct arises

---

[11]    9 U.S.C. § 2 ("A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*." (emphasis added)).

[12]    9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, *providing the applicant for the stay is not in default in proceeding with such arbitration*." (emphasis added)).

[13]    *Goodwin v. Elkins & Co.*, 730 F.2d 99, 108 (3d Cir. 1984).

[14]    *Id*.

[15]    *See* 9 U.S.C. § 3 (emphasis added).

under § 3 of the Arbitration Act, federal law applies.[16]  But the savings clause — § 2 of the Arbitration Act — provides that arbitration agreements "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*"[17]  State law, not federal law, is applicable when a court is considering a defense under § 2 that is grounds for "the revocation of [the] contract."[18]

Whether waiver by litigation conduct arises under § 2 or § 3 of the Federal Arbitration Act has rarely been explicitly considered by courts.  Many federal courts apply federal law while using default and waiver language interchangeably, and state courts generally apply state law while using waiver language only.[19]  According to one commentator, "There is general agreement among the circuit courts that the term 'default' in Section 3 should, under appropriate circumstances, be read to include waiver of the right to arbitrate by participation in litigation."[20]  In many cases there is little

---

[16]     Under § 3, the court must apply federal law because "if the Arbitration Act is deemed applicable, federal law applies in construing and enforcing an arbitration clause, even in those cases in which jurisdiction is based on diversity."  *Goodwin*, 730 F.2d at 108.

[17]     9 U.S.C. § 2 (emphasis added).

[18]     *Perry v. Thomas*, 482 U.S. 483, 492-93 (1987); 9 U.S.C. § 2.

[19]     *See, e.g.*, *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 13 (1st Cir. 2005) ("A 'default' has generally been viewed by courts as including a 'waiver.' "); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 218 (3d Cir. 2007) (holding that waiver and default are synonymous); *Thompson v. Skipper Real Estate Co.*, 729 So. 2d 287, 290-93 (Ala. 1999) (discussing waiver under state law but not default); *Kirk v. Credit Acceptance Corp.*, 829 N.W.2d 522, 532-34 (Wis. 2013) (same); *Townsend v. Quadrant Corp.*, 268 P.3d 917, 922-23 (Wash. 2012) (same); *Saint Agnes Med. Ctr. v. PacifiCare of Cal.*, 82 P.3d 727, 737 (Cal. 2003) (same).

[20]     Thomas J. Lilly, Jr., *Participation in Litigation as a Waiver of the*
(continued...)

difference between the tests under state and federal law, so the distinction is not usually a crucial one.[21]

We conclude that waiver by litigation conduct is a defense arising under § 3 of the Federal Arbitration Act such that federal law applies. We believe that waiver is not a defense that gives rise to "the revocation of [a] contract" under § 2.[22] Waiver is a defense that may make a contract unenforceable, but it does not traditionally give rise to the right to revoke the contract.[23] As Justice Thomas explained in his concurrence to *AT&T Mobility LLC v. Concepcion*, "The use of only 'revocation' [in § 2's savings clause] and the conspicuous omission of 'invalidation' and 'nonenforcement' suggest that the exception does not include all defenses applicable to any contract but rather some subset of those defenses."[24] Again, waiver is not a defense traditionally included

---

[20](...continued)
*Contractual Right to Arbitrate: Toward a Unified Theory*, 92 NEB. L. REV. 86, 100 (2013) (citing *Ehleiter*, 482 F.3d at 217; *Marie*, 402 F.3d at 14; *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004)); *see, e.g.*, *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) ("Our determination of whether S & H waived its right to arbitration, as opposed to whether the contract is void under Alabama law, is controlled solely by federal law.").

[21] *See, e.g.*, *Townsend*, 268 P.3d at 922-23; *Saint Agnes Med. Ctr.*, 82 P.3d at 737.

[22] 9 U.S.C. § 2.

[23] 13 R. LORD, WILLISTON ON CONTRACTS § 39:14, at 612-13 (4th ed. 2012) ("[E]ither party to a contract may waive virtually any contractual provision or right in its favor . . . ."); *id.* § 39:27, at 678 ("Waiver of *a contract provision* may be made by a party's express declaration, or it may be implied from representations that fall short of an express declaration of waiver . . . ." (emphasis added)).

[24] 563 U.S. 333, 354 (2011) (Thomas, J., concurring).

in the "subset" of revocation defenses.[25] Strengthening this position, when the Supreme Court has listed defenses under § 2, it has only listed defenses that are traditionally grounds for the revocation of a contract: fraud, duress, and unconscionability.[26]

It is true that the Supreme Court has used language that arguably sanctions the use of state law for all defenses to the arbitrability of contracts. For example, in *Arthur Andersen LLP v. Carlisle*, the Court explained, " '[S]tate law,' therefore, is applicable to determine which contracts are binding under § 2 and enforceable under § 3 'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.' "[27] But in *Arthur Andersen* the Court was not interpreting § 2. Instead, it was focused on allowing a non-party beneficiary to a contract to invoke § 3 to *enforce* the Federal Arbitration Act arbitration clause in an agreement.[28] The remainder of the Court's analysis focused upon § 3. We think that these statements do not sweep waiver, a defense giving rise to the non-enforcement of a contract provision, into the category of defenses that are grounds for revocation of the contract. Consequently, we hold that waiver arises under § 3 and federal law applies.

---

[25] *Compare* 13 R. LORD, WILLISTON ON CONTRACTS § 39:15, at 622 (4th ed. 2012) ("[O]nce it has been established that a right has been waived, the party possessing the right prior to the waiver is generally precluded from asserting it in a court of law, particularly when the nonwaiving party has suffered prejudice or has relied to its detriment on the waiver." (footnotes omitted)), *with* 27 *id.* § 70:106, at 530 ("A contract may be rescinded where there is a clear, bona fide, mutual mistake regarding a material fact or law.").

[26] *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("[G]enerally applicable contract defenses, such as fraud, duress, or unconsionability, may be applied to invalidate arbitration agreements without contravening § 2 . . . .").

[27] 556 U.S. 624, 629-31 (2009) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987)).

[28] *Id.*

There is no uniformly accepted federal rule to determine whether a party seeking arbitration has waived its right to arbitration, but the circuit courts generally consider the following elements: (1) knowledge of the right to compel arbitration; (2) acts inconsistent with that right; and (3) prejudice to the opposing party because of those acts.[29]

The amount of prejudice required varies among the circuits.[30] We generally agree with the Seventh Circuit's approach set out in *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co.* that "where it is clear that a party has forgone its right to arbitrate, a court may find waiver even if that decision did not

---

[29] *E.g.*, *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 728 F.3d 853, 862 (8th Cir. 2013) (citing *Wootten v. Fisher Invs., Inc.*, 688 F.3d 487, 492-93 (8th Cir. 2012)); *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002) (citing *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990)). Some courts consider a variety of nonexclusive factors related to these elements in determining whether the right to arbitration has been waived. *E.g.*, *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 702 (4th Cir. 2012); *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109, 117 (3d Cir. 2012) (quoting *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011); *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 208 (3d. Cir. 2010)); *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 772-73 (10th Cir. 2010) (quoting *Peterson v. Shearson/Am. Express*, 849 F.2d 464, 467-68 (10th Cir. 1988)); *Khan v. Parsons Global Servs., Ltd.*, 521 F.3d 421, 425 (D.C. Cir. 2008) (quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons*, 821 F.2d 772, 774-75 (D.C. Cir. 1987)); *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 163 (2d Cir. 2000); *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997); *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995).

[30] *Compare Sovak*, 280 F.3d at 1270 (noting in Ninth Circuit party has "heavy burden" in showing prejudice (quoting *Britton*, 916 F.2d at 1412)), *with In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 44-45 (1st Cir. 2005) (noting First Circuit requires party to demonstrate "modicum of prejudice" (quoting *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 12 (1st Cir. 2003))).

prejudice the non-defaulting party."[31] We conclude that "a court may consider prejudice to the [party opposing arbitration] as a relevant factor among the circumstances that the court examines in deciding whether the moving party has taken action inconsistent with the agreement to arbitrate."[32] The essential question is whether, based on the totality of the circumstances, and giving due regard to the strong federal policy favoring arbitration[33] and disfavoring an inference of waiver, the alleged waiving party's participation in litigation evidences an intention to waive that right or is so inconsistent with the right to arbitrate that it is contrary to any other intention than waiver.

> **2.  Citibank did not waive its right to arbitrate the UTPA claims because the totality of the circumstances does not evidence an intention to waive its right to arbitrate.**

In this case Citibank filed a debt-collection suit in state court, and after prevailing it was awarded attorney's fees; Hudson later filed a separate action based on the alleged unfair trade practices associated with the attorney's fees award. Citibank then moved to arbitrate Hudson's separate action.

We conclude that, based on the totality of the circumstances, Citibank's decision to litigate its debt collection claim and ask for attorney's fees did not evidence an intent to waive its right to arbitrate the different, more complex UTPA claim. First, it is well accepted that "the law favors arbitration"[34] and "waiver is not to be lightly

---

[31]     969 F.2d 585, 590 (7th Cir. 1992).

[32]     *Nat'l Found. for Cancer Research*, 821 F.2d at 777.

[33]     *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013).

[34]     *Blood v. Kenneth Murray Ins., Inc.*, 68 P.3d 1251, 1255 (Alaska 2003) (citing *Bd. of Educ., Fairbanks N. Star Borough Sch. Dist. v. Ewig*, 609 P.2d 10, 13 (Alaska 1980)); *Midwest Window Sys., Inc. v. Amcor Indus., Inc.*, 630 F.2d 535, 536 (7th
(continued...)

inferred."[35]  All doubts regarding the occurrence of waiver should be resolved in favor of arbitration.[36]  And § 3 of the Federal Arbitration Act provides that if a suit is brought on an issue that is referable to arbitration and one party moves to have the issue arbitrated, the trial court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is *not in default* in proceeding with such arbitration."[37]

Second, the Arbitration Agreement governing the relationship between the parties allowed either party to "elect mandatory, binding arbitration" of "any claim, dispute, or controversy."  The arbitration clause stated:  "All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy . . . they seek. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party."  The clause continued:

> At any time you or we may ask an appropriate court to compel arbitration of Claims, . . . even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered.  Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

The clause also asserted that "[a]ny questions about whether Claims are subject to

---

[34](...continued)
Cir. 1980).

[35]     *Blood*, 68 P.3d at 1255 (citing *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1988)).

[36]     *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Blood*, 68 P.3d at 1255 (citing *Doctor's Assocs. Inc. v. Distajo*, 107 F.3d 126, 130 (2d Cir. 1998)).

[37]     9 U.S.C. § 3 (2012) (emphasis added).

arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced." Finally, the clause stated that "Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis." The text of the Arbitration Agreement clearly provides that Citibank was authorized under its contract with Hudson to seek arbitration on claims distinct from its original debt collection action and its request for attorney's fees.[38]

Third, a party may waive its right to arbitrate separate claims, but the claims must be closely related in order for the party's act in bringing suit on one claim to be inconsistent with the existing right to arbitrate another claim.[39] One circuit has held claims were waived when "basically only one controversy exists between the parties."[40] And another has held that a party waived arbitration when matters were "so closely

---

[38]    We disagree with the dissent's analysis about what would have happened had Hudson actually raised a UTPA counterclaim in the collection litigation. If Hudson had raised the UTPA simply to defend and reduce the Rule 82 award, Citibank may have been locked in to the superior court litigation. But if Hudson had raised the UTPA to assert an affirmative counterclaim of some kind, Citibank would have had every right under the arbitration provision to demand arbitration of that counterclaim, regardless of its connection to the Rule 82 claim. Under the dissent's analysis, Hudson avoids the plain language of the arbitration provision to which she agreed simply by defaulting in the first lawsuit and waiting to assert her counterclaim in a separate lawsuit. That cannot be the correct result.

[39]    *See Midwest Window Sys., Inc.*, 630 F.2d at 537; *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 110 (2d Cir. 1997); *see also Gutor Int'l AG v. Raymond Packer Co.*, 493 F.3d 938, 946 (1st Cir. 1974) (holding that "[a]ll related matters" must be arbitrated); *G.T. Leach Builders, LLC v. TCMS, Inc.*, No. 13-11-310 CV, 2012 WL 506568, at *3-5 (Tex. App. Feb. 16, 2012) (applying federal law and finding waiver when the two claims were based on the same contract).

[40]    *Midwest Window Sys., Inc.*, 630 F.2d at 537 (holding claims waived because they all "[grew] out of their unsatisfactory business relationship").

related as to form what is really a single controversy" because the claims involved the "same facts and legal issues."[41]  Another way of saying this is that the claims are "intertwined" and that the "fact finder would necessarily have to resolve fact issues common to both."[42]  While being brought in separate actions makes it more likely that two claims are not "intertwined," the filing of separate actions alone does not make the claims unrelated.[43]

We conclude that Citibank's decision to litigate its simple debt-collection action does not convey that it also intended to forgo arbitration on a different, more complex UTPA claim.  The UTPA claim broadens the scope of the proceeding by such a magnitude that it fundamentally transforms the litigation.[44]  The evidence and legal

---

[41]     *PPG Indus., Inc.*, 128 F.3d at 110.

[42]     *Owens & Minor Med., Inc. v. Innovative Mktg. & Distrib. Servs.*, 711 So. 2d 176, 177 (Fla. Dist. App. 1998).

[43]     *See Midwest Window Sys., Inc.*, 630 F.2d at 536-37 (holding that fraudulent collection on promissory note was reasonably related to breach of contract claim); *Blackburn v. Citifinancial, Inc.*, No. 05AP-733, 2007 WL 927222, at *5 (Ohio App. Mar. 29, 2007) (holding that debt-collection action was closely related to fraud in origination of the loan); *G.T. Leach Builders, LLC*, 2012 WL 506568, at *3-5 (holding that claims in two separate lawsuits — one for breach of contract and one for payment — were reasonably related).

[44]     *See Plaintiff's Shareholders Corp. v. Southern Farm Bureau Life Ins. Co.*, 486 F. App'x 786, 790 (11th Cir. 2012) ("Nonetheless, where a plaintiff files an amended complaint that 'unexpectedly changes the scope or theory of the plaintiff's claims,' fairness dictates that a defendant's prior waiver of arbitration be nullified and the right to compel arbitration revived." (quoting *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011))); *Cabinetree of Wis. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995) ("The shape of the case might so alter as a result of unexpected developments during discovery or otherwise that it might become obvious that the party should be relieved from its waiver and arbitration allowed to proceed.").

theories included in the two different claims would have little if any overlap.[45] The

bank's claim for recovery of the debt would center on the language of the contract and

the breach of the cardholder's duty to pay, while the cardholder's UTPA claim would

involve attorney's fees practices, e.g., whether Citibank entered into a contingency fee

contract with its collections attorneys and whether a contingency fee is a permissible

basis for recovering attorney's fees under Alaska Civil Rule 82's default judgment fee

provision.[46] The claims did not arise out of the same transaction; one arose from the

credit card contract and one arose from the bank's fee agreement with its lawyers and

post-litigation attorney's fees motions.[47]

Other courts considering similar fact patterns have likewise held that a debt-

collection proceeding does not waive arbitration of a later consumer-protection claim.

A federal district court in Michigan noted that "[n]umerous courts across the country

have found that commencing a separate debt collection lawsuit does not, on its own,

waive the right to arbitration."[48] In *Fields v. Howe*, a case from the Southern District of

---

[45]    *See PPG Indus., Inc.*, 128 F.3d at 110 (holding that the claims must be "so closely related as to form what is really a single controversy" and share the "same facts and legal issues").

[46]    The essence of Hudson's UTPA claim is that Citibank's attorneys performed relatively little work to obtain a default judgment on a simple debt action, yet because the attorneys were being compensated under a 20% contingency fee agreement, the attorney's fees requested and awarded under Rule 82(b)(1) were disproportionately higher than the hourly fee they would have charged, making them unreasonable. Hudson alleges this attorney's fee practice violates the UTPA.

[47]    *Cf. Midwest Window Sys., Inc.*, 630 F.2d at 537 (finding waiver for two disputes — one for payment and one for performance — that grew out of the same contract); *G.T. Leach Builders, LLC*, 2012 WL 506568, at *4 (same).

[48]    *Garcia v. Weltman, Weinberg & Reis Co. of Mich.*, No. 2:13-CV-14362,
(continued...)

Indiana, the court held that "[t]he fact that the present action arose because of Discover's allegedly improper conduct in the course of [the debt-collection action] does not render this cause one and the same as Discover's state court case."[49] The court explained, "The state court case is a collection action — a case initiated by Discover; the federal court case is an action for alleged violation of federal and state laws — a case initiated by Fields."[50] And in *Funderburke v. Midland Funding, L.L.C.* a federal district court in Kansas held that a debt-collection action did not waive the right to demand arbitration of a later-filed consumer-protection claim.[51] We agree with these courts.

Hudson relies on *Midwest Window Systems, Inc. v. Amcor Industries, Inc.*,[52] a case from the Seventh Circuit. In that case, Midwest Window and Amcor agreed that Amcor would make all of its pending deliveries and Midwest Window would issue promissory notes for the pending orders.[53] Unfortunately for Midwest Window, Amcor did not make any of the deliveries but still went to court and received default judgment on the notes.[54] Midwest Window promptly filed a separate action alleging breach of the

---

[48](...continued)
2014 WL 1746522, at *5-6 (E.D. Mich. Apr. 30, 2014).

[49]    No. IP-01-1036-C-B/S, 2002 WL 418011, at *7-8 (S.D. Ind. Mar. 14, 2002).

[50]    *Id.*

[51]    No. 12-2221-JAR/DJW, 2013 WL 394198, at *7-8 (D. Kan. Feb. 1, 2013).

[52]    630 F.2d 535 (7th Cir. 1980).

[53]    *Id.* at 535-36.

[54]    *Id.*

contract and fraud, which Amcor moved to arbitrate.[55] Midwest Window re-opened the promissory-note case and the court consolidated the two cases.[56] On appeal, the Seventh Circuit held that Amcor's action to reduce the notes to judgment waived arbitration of the second proceeding — the breach of contract claims. It found that the issues in the breach of contract action and in the debt-collection action were similar enough that "basically only one controversy exists between the parties."[57]

But *Midwest Window* is distinguishable. The majority of the claims at issue in that case were breach of contract claims all arising from the same contract. The fraud claims on the notes were mainly incidental to these claims. Thus the issue was whether the two suits — one for payment and one for performance, both on the same contract — were related. The Seventh Circuit reasonably concluded they were related. The two proceedings concerned the "same facts and legal issues"[58] — facts relating to the wording and origination of the contract. Here, however, Hudson does not argue that the

---

[55]    *Id*.

[56]    *Id.*

[57]    *Id.* at 537.

[58]    *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 110 (2d Cir. 1997). Hudson points to another case from the Ohio Court of Appeals where an elderly woman was fraudulently convinced to sign a mortgage and loan secured by her house. *See Blackburn v. Citifinancial, Inc.*, No. 05AP-733, 2007 WL 927222, at *4 (Ohio App. Mar. 29, 2007). Citifinancial instituted a foreclosure action in court and sought judgment on the underlying promissory note, which was covered by an arbitration agreement. The suit was dismissed as premature, and the plaintiffs filed suit against Citifinancial alleging fraud in the origination of the loan. Citifinancial immediately moved to stay the proceedings and compel arbitration, but the court held that it had waived the right to arbitrate by litigating the foreclosure. *Blackburn* is distinguishable because the claims were more closely related. The same evidence would have been relevant to both claims — the origination of the note and the specifics of the contract.

underlying contract was fraudulently induced or that she did not owe the debt. The evidence and legal issues central to the two controversies do not overlap. The UTPA proceeding would feature testimony relating to the standard for reasonable attorney's fees in debt-collection actions, the hours actually worked by Alaska Law Offices, and the general practice of attorneys in similar types of cases. The debt collection proceeding would rely on the credit card agreement and evidence of Hudson's failure to pay her debts.

We conclude that Citibank's debt collection claims and Hudson's UTPA attorney's fees claims are not sufficiently closely related such that they would be considered only one controversy. Given this conclusion, and giving due regard to the strong federal policy resolving all doubts in favor of arbitration, we also conclude that Citibank's filing a state court action to recover its debt did not evidence a clear intent to waive its right to arbitrate a subsequent UTPA claim. Therefore, under the totality of the circumstances — particularly given the language of the arbitration provision and the unrelatedness of the two sets of litigation — we hold that Citibank did not waive its right to arbitrate Hudson's UTPA attorney's fees claim and affirm this aspect of the superior court's decision.

B.    It Was Error To Hold That The Arbitrator Could Issue Statewide Injunctive Relief.

The superior court concluded, notwithstanding the explicit language of the Arbitration Agreement providing that "the arbitrator may award relief only on an individual (non-class, non-representative) basis," that under the UTPA Hudson had a non-waivable right to pursue relief on a statewide basis. By drawing a distinction between the right to litigate a claim and the right to pursue a type of relief, the court held that the arbitrator could grant statewide relief.

The Supreme Court has been exceedingly clear that parties to an arbitration

-20-                                                                7141

agreement may not be subjected to procedures for which they did not bargain. In *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, the Supreme Court decided whether class arbitration was available when the contract was silent on the issue.[59] The Court held that parties may choose the type of arbitration they wish to employ and with whom they want to arbitrate, and courts must "give effect to the contractual rights and expectations of the parties."[60] But because the arbitration agreement was silent on the availability of class arbitration in *Stolt-Nielsen*, the Court held that class arbitration was not available because a "party may not be compelled under the [Arbitration Act] to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."[61] And in *AT&T Mobility v. Concepcion*, the Supreme Court struck down a California rule of decision because it allowed consumers to demand class arbitration even when it was prohibited by their arbitration agreements.[62] The Court held that this violated the central tenant of its arbitration precedent: to "ensur[e] that private arbitration agreements are enforced according to their terms."[63]

We do not need to decide whether the arbitration agreement in this appeal prohibits statewide injunctive relief. The interpretation of an arbitration agreement is a question for arbitration.[64] For example, in *Ferguson v. Corinthian Colleges*, the Ninth

---

[59]    559 U.S. 662 (2010).

[60]    *Id.* at 682-83 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

[61]    *Id.* at 684.

[62]    131 S.Ct. 1740, 1756 (2011).

[63]    *Id.* at 1748 (alteration in original) (quoting *Volt*, 489 U.S. at 478).

[64]    *See Johnson v. Aleut Corp.*, 307 P.3d 942, 949 (Alaska 2013); *Ahtna,*
(continued...)

-21-                                                                7141

Circuit concluded that the question whether public injunctive relief could be granted in a student loan controversy was initially a question for the arbitrator.[65] It was error for the superior court to decide that the arbitrator could order statewide injunctive relief. We vacate the court's decision: on remand the issue of the availability and scope of injunctive relief must be referred to arbitration.

## V.    CONCLUSION

We AFFIRM the superior court's order staying court proceedings and submitting the dispute to arbitration, but we REVERSE and VACATE the superior court's ruling that the arbitrator can order statewide injunctive relief, and we REMAND for further proceedings consistent with this opinion.

---

[64](...continued)
*Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 662 (Alaska 1995).

[65]      733 F.3d 928, 937 (9th Cir. 2013).

MAASSEN, Justice, with whom FABE, Chief Justice, joins, dissenting.

The determinative issue in this case is whether Citibank's claim for attorney's fees under Alaska Civil Rule 82 is "closely related" to Janet Hudson's claim in response: that Citibank's attorney's fees claim is greatly inflated, violates the Unfair Trade Practices and Consumer Protection Act (UTPA), and entitles Hudson to statutory remedies. I believe the attorney's fees claim and the UTPA-based response to it are indeed closely related. For that reason, and because the language of the parties' contract has no effect on the court's authority to find that a party waived arbitration through its use of the judicial process, I would hold that Citibank, by deliberately bringing its attorney's fees claim in Alaska's courts and pursuing it to judgment, waived its right to arbitrate Hudson's factual and legal challenges to the claim's basis and amount. I therefore dissent from the court's holding today.

A.    **Hudson's UTPA Claim Based On Citibank's Rule 82 Claim Is Closely Related To Citibank's Rule 82 Claim.**

Citibank's complaint against Hudson demanded not only "[a] money judgment in the amount of $24[,]170.24" but also "Alaska Rule of Civil Procedure 82 Attorney[']s fees" in an unspecified amount.[1] After securing a default, Citibank filed an affidavit in which it claimed $4,834.05 in "actual attorney[']s fees"; it noted that this amount exceeded the ten percent of the judgment allowed by the Rule 82 schedule and therefore requested that lesser amount — $2,417.02 — instead. There is no question but that Citibank intentionally put both its entitlement to Rule 82 attorney's fees and their amount at issue in its lawsuit and thereby waived the right to arbitrate the Rule 82 claim.[2]

---

[1]    I describe the background of only Hudson's case here; Cynthia Stewart's ran a parallel course and is analytically indistinguishable.

[2]    Citibank contends that it "would have had the right to pursue its fees" in

(continued...)

Hudson did not appear in the collection suit. She did not object to the fees award until later, when she filed her class-action complaint alleging that the fees claimed by Citibank, in her case and others, exceeded the amounts allowed by Rule 82 and violated the UTPA. That her objections were raised in a later lawsuit does not matter to whether the relevant claims are "closely related," as the court agrees:[3] In determining whether the party demanding arbitration has already indicated an intent to litigate the same legal and factual issues, "[i]t is irrelevant that the prior litigation occurred as part of a separate action or in a different court."[4] What matters, in the words of the court today, is whether the attorney's fees claim and the response to it are "so closely related as to form what is really a single controversy" because they involve the "same facts and legal issues";[5] in other words, whether the claims are "intertwined" and the "fact finder would necessarily have to resolve fact issues common to both."[6]

The court's application of this test today goes astray, in my view, when it contrasts "[t]he evidence and legal theories included in the two different claims" — the debt collection action and the UTPA claim — and concludes that they "have little if any

---

**[2]**(...continued)
arbitration; it chose to litigate them in court instead.

**[3]**      Op. at 17-18 ("[T]he filing of separate actions alone does not make the claims unrelated.").

**[4]**      *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 n.2 (2d Cir. 1997); *see also In re Enron Corp.*, 364 B.R. 489, 512 (Bankr. S.D.N.Y. 2007) ("A party waives the right to invoke arbitration where it has previously litigated the same legal and factual issues even if that litigation occurred as part of a separate action or in a different forum.").

**[5]**      Op. at 17 (quoting *PPG Indus., Inc.*, 128 F.3d at 110).

**[6]**      *Id.* (quoting *Owens & Minor Med., Inc. v. Innovative Mktg. & Dist. Servs.*, 711 So. 2d 176, 177 (Fla. Dist. App. 1998)).

overlap."[7]  The court is contrasting the wrong two claims.  Citibank did not merely sue to collect a debt; it also made a claim for Rule 82 attorney's fees, which — as the court points out — had a wholly separate evidentiary and legal basis.[8]  The proper focus of today's inquiry is on the overlap between *Citibank's claim for Rule 82 attorney's fees* and Hudson's UTPA claim raised in response to it.[9]  The evidentiary overlap between these two claims is close to complete;[10] a "fact finder would necessarily have to resolve fact issues common to both,"[11] i.e., whether Citibank misstated its fees.  A victory for Hudson in her later lawsuit would impugn the legitimacy of Citibank's judgment in its earlier lawsuit.  Indeed, the two claims are inextricably intertwined even as the court describes them:

> The essence of Hudson's UTPA claim is that Citibank's attorneys performed relatively little work to obtain a default judgment on a simple debt action, yet because the attorneys were being compensated under a 20% contingency fee agreement, the attorney's fees requested and awarded under Rule 82(b)(1) were disproportionately higher than the hourly

---

[7]    Op. at 18.

[8]    *See* Op. at 18-19, 21-22.

[9]    The court's attempt to distinguish *Midwest Window Systems, Inc. v. Amcor Indus., Inc.*, 630 F.2d 535 (7th Cir. 1980), is thus irrelevant, in my view, because whether Hudson's claim is related to any aspect of Citibank's debt-collection action other than its Rule 82 claim is beside the point.  Op. at 21.  I find support in the court's discussion of *Blackburn v. Citifinancial, Inc.*, No. 05AP-733, 2007 WL 927222 (Ohio App. Mar. 29, 2007), which the court distinguishes because "[t]he same evidence would have been relevant to both claims."  Op. at 21 n.58.  That is the situation here.

[10]    As the court describes it, Hudson's UTPA claim "arose from the bank's fee agreement with its lawyers and post-litigation attorney's fees motions" — in other words, Hudson's UTPA claim "arose from" Citibank's Rule 82 claim.  Op. at 19.

[11]    Op. at 17 (quoting *Owens & Minor Med.*, 711 So. 2d at 177).

fee they would have charged, making them unreasonable.[12]

One simply cannot articulate Hudson's UTPA claim outside the context of Citibank's Rule 82 attorney's fees claim.[13]

Although a challenge to the basis or amount of a Rule 82 attorney's fees claim can never be unanticipated in Alaska practice, we can perhaps assume that Citibank did not anticipate a challenge based specifically on the UTPA.[14] But I caution against deferring too much to the defenses a litigant anticipated when we are deciding whether its claim is closely related to the other party's response. The court today

---

[12]     Op. at 19 n.46.

[13]     The court's reliance on three unpublished cases that "consider[ed] similar fact patterns" is unpersuasive. Op. at 19-20. The cases are similar in that they involved consumer protection suits following debt collection actions, but, unlike here, they did not also include a claim in the original action that turned on facts common to the consumer protection suit. *See Garcia v. Weltman, Weinberg & Reis Co. of Mich.*, No. 2:13-cv-14362, 2014 WL 1746522, at *2, *5 (E.D. Mich. Apr. 30, 2014) (finding "the issues at play in the state court [debt-collection] litigation . . . fundamentally different from Plaintiff's unfair debt collection practice claims" based on debt collection practices taken outside of court); *Funderburke v. Midland Funding, L.L.C.*, No. 12-2221-JAR/DJW, 2013 WL 394198, at *2, *7 (D. Kan. Feb. 1, 2013) (finding the new claim arbitrable where the first claim was for debt collection and the later claim alleged that the defendant had no authority to collect the debt and the attempt to do so was tortious and otherwise unlawful, issues "not litigated in [the first] action" and dependent on facts not at issue there); *Fields v. Howe*, No. IP-01-1036-C-B/S, 2002 WL 418011, at *7 (S.D. Ind. Mar. 14, 2002) (concluding that "the tort and other claims Fields pursues in federal court are not the same claims [the defendant] lodged in state court," though apparently rejecting waiver as a defense categorically, noting in dicta that the cardmember agreement would have allowed arbitration "even if the cases were one and the same").

[14]     Even this is questionable, given our long-standing application of the UTPA to debt-collection practices. *See, e.g., State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 523-36 (Alaska 1980) (rejecting constitutional challenges to the UTPA and applying it to independent debt-collection practices).

observes that "Citibank's decision to litigate its simple debt-collection action does not convey that it also intended to forgo arbitration on a different, more complex UTPA claim."[15] I doubt that the plaintiff in a consumer debt-collection case will ever be found to have subjectively anticipated a complex defense to its claim, no matter what that defense might be and how "closely related" it appears to an objective eye. Sometimes, as in these cases of consumer default, the plaintiff likely expects no defense at all. But I suggest that whether the plaintiff anticipated *the defense to its claim* should not have the significance the court gives it; much more important is whether the plaintiff *intended to litigate its claim*. By filing its claim in court the plaintiff invites a response in the same forum.[16] Citibank's claim for Rule 82 attorney's fees was plainly inconsistent with an intent to arbitrate either its right to those fees or the reasonableness of those fees.

Nor do I believe that the closely related claim and response lost their relatedness because Hudson chose to file her action on behalf of a proposed class. The proposed class consists of persons like Hudson "against whom defendants obtained a

---

[15] Op. at 18.

[16] This also differentiates other cases on which the court relies, in which it is a *defendant* who acquiesces in a court proceeding and later invokes arbitration when the *plaintiff* expands the theory or scope of the claims at issue. *See Plaintiffs' S'holders Corp. v. S. Farm Bureau Life Ins. Co.*, 486 F. App'x 786, 790 (11th Cir. 2012) ("[W]here a plaintiff files an amended complaint that 'unexpectedly changes the scope or theory of the plaintiff's claims,' fairness dictates that a defendant's prior waiver of arbitration be nullified and the right to compel arbitration revived." (quoting *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011))); *Cabinetree of Wis. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 389, 390 (7th Cir. 1995) (finding presumptive waiver of arbitration when defendant to a contract claim first sought removal to federal court and later "dropped a bombshell into the proceedings" by seeking arbitration instead, but acknowledging that the defendant might be allowed to rescind the waiver under certain "extraordinary circumstances"); Op. at 18 n.44. The same fairness concerns are not implicated in a case like this one — at least not in favor of the party demanding arbitration — where it is that party who opted for court in the first place.

default judgment including attorney's fees since July 15, 2009." Had the collections cases been defended, Citibank could reasonably have expected a challenge to the amount of fees from each of these class member-defendants; it waived its right to arbitrate the Rule 82 claim in each individual case and as to each potential class member. That Hudson seeks to consolidate the cases for decision adds procedural efficiencies this court has long encouraged;[17] it does not dilute the claims' relatedness. In other words, the fact that *all* the class members' claims are closely related to the attorney's fees claims on which they hinge cannot mean that *none* of them are. And the fact that Citibank waived arbitration as to each one of them individually cannot mean that it reserved arbitration as to all of them as a class.

**B.** **The Language Of The Arbitration Agreement Does Not Restrain The Court's Application Of Waiver Principles.**

The court today relies heavily on the language of the parties' Arbitration Agreement to conclude that Citibank retained the right "to seek arbitration on claims distinct from its original debt collection action and its request for attorney's fees" regardless of waiver principles that would otherwise apply.[18] But parties cannot contract

---

[17] *See State, Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 872 (Alaska 2003) ("Class action suits, in which the result for one becomes the result for many in the same legal predicament, are necessary to avoid a multiplicity of duplicative lawsuits."); *Turner v. Alaska Commc'ns Sys. Long Distance, Inc.*, 78 P.3d 264, 268 (Alaska 2003) (observing that "the aggregation of small individual claims is an important use of the class action device, since without it, 'aggrieved persons may be without any effective redress' " (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980))); *Crawford & Co. v. Vienna*, 744 P.2d 1175, 1177 (Alaska 1987) ("The purpose of a class action is to afford numerous individuals united in interest an efficient means to adjudicate claims.").

[18] Op. at 15-16; *see also id.* at 22 ("Therefore, under the totality of the circumstances — *particularly given the language of the arbitration provision* and the
(continued...)

away the courts' exercise of the inherent authority to find that the right to arbitrate has been waived by the pursuit of a judicial remedy.

Federal courts are appropriately skeptical of "no waiver" clauses in arbitration agreements. "[T]he presence of [a] 'no waiver' clause does not alter the ordinary analysis undertaken to determine if a party has waived its right to arbitration."[19] "This makes sense because 'to allow the "no waiver" clause to preclude a finding of waiver would permit parties to waste scarce judicial time and effort and hamper judges' authority to control the course of the proceedings' and allow parties to 'test[] the water before taking the swim' by delaying assertion of their right to arbitration until the

---

**[18]**(...continued)
unrelatedness of the two sets of litigation — we hold that Citibank did not waive its right to arbitrate Hudson's UTPA attorney's fees claim and affirm this aspect of the superior court's decision." (emphasis added)).

**[19]**    *Johnson Assoc. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (quoting *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 86 (2d Cir. 1998)); *see also Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 452 (3d Cir. 2011) (holding "that the clause in the [agreement] allowing either party to seek injunctive relief until the arbitration award is rendered d[id] not override the applicability of the . . . analysis which examines whether a party, by its participation in litigation, has waived its right to invoke arbitration"); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 348-49 (5th Cir. 2004) ("The inclusion of a 'no waiver' clause in a contract does not eliminate the district court's inherent power to control its docket. In this case the Settlement Agreement's 'no waiver' clause is not sufficient to overcome the district court's exercise of its inherent authority in light of Republic's extensive use of the judicial process."); Thomas Oehmke & Joan Brovins, *Causes of Action Involving Arbitrable Disputes*, 32 CAUSES OF ACTION 2d 385 § 33 (2006 & Oct. 2016 Update) (discussing *Republic Ins.*); JAY GRENIG, 1 ALT. DISP. RESOL. § 23.32 (3d ed. 2015) (emphasizing as "important" that "[a] 'no waiver' clause in an arbitration provision of a settlement agreement is not sufficient to overcome a court's exercise of its inherent authority to find that a party has waived its right to arbitrate" (citing *Republic Ins.*, 383 F.3d 341 (5th Cir. 2004))).

litigation is nearly complete."[20]

Citibank chose to file its debt-collection action in Alaska's courts, where Civil Rule 82 and the efficient default-judgment process allowed it to increase Hudson's consumer debt by what it claimed to be thousands of dollars in attorney's fees. It opted against arbitration, where its right to Rule 82 fees would be at best problematic.[21] When challenged in Hudson's instant suit, Citibank demanded that the attorney's fees issue it had already litigated to an easy judgment in Alaska's courts be arbitrated instead. But under the "closely related" test of waiver as the court explains it today, I would hold that Citibank is not entitled to relitigate the issue in a new forum under a new set of rules; the parties' contract has no effect on this conclusion. I therefore dissent.

---

[20] *Johnson Assoc.*, 680 F.3d at 717 (alteration in original) (quoting *S & R Co.*, 159 F.3d at 86).

[21] According to Citibank, it could recover Rule 82 fees in arbitration because the agreement allows it to recover "court costs or any other fees as allowed by law." According to Hudson, it is Citibank's position that South Dakota law applies, and Citibank acknowledges that an "award of attorney's fees is not the norm" in South Dakota but argues that they are permitted. Regardless of the forum and the applicable law, Citibank admits that "there may [have been] a difference in the amount of fees Citibank might . . . have recovered if it pursued Hudson's undisputed debt in arbitration."